633 A.2d 1115

**Ethel MILLS, Appellee,**

v.

**COMMONWEALTH of Pennsylvania and Penn's Landing Corporation, Appellants.**

**Anita and Joseph HALBER, Appellees,**

v.

**CITY OF PHILADELPHIA and Philadelphia Redevelopment Authority and Penn's Landing Corporation, Appellants.**

Supreme Court of Pennsylvania.

Argued Jan. 28, 1993.

Decided Nov. 8, 1993.

520

Alfred W. Putnam, E. Graham Robb, Philadelphia, for Penns Landing Corp.

Peter A. Dunn, Media, for appellants.

T. Jonathan Hankin, Paul C. Quinn, Philadelphia, for Ethel Mills.

Allan E. Ells, Philadelphia, for Commonwealth.

Sharon L. Steingard, Philadelphia, for Anita & Joseph Halber.

Carolann M. Leuthy, Philadelphia, for City of Philadelphia.

Before LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

*OPINION OF THE COURT*

CAPPY, Justice.

These consolidated cases question the scope of immunity provided by the Recreation Use of Land and Water Act ("RUA"), 68 P.S. § 477–1 et seq., to the owners of a clearly defined 37 acre tract of land containing various improvements. For the reasons that follow we find that the owners of the land in question, Penn's Landing in Philadelphia, are not entitled to immunity pursuant to the RUA.

Penn's Landing is a 37 acre tract of land along the west bank of the Delaware river in the city of Philadelphia where William Penn disembarked and founded the province of Pennsylvania. The land is owned by the Redevelopment Authority of the City of Philadelphia and leased to the O.P.D.C. Penn's Landing Corporation (hereinafter "Penn's Landing"). Penn's Landing is a non-profit municipal corporation. The area itself is open to the public free of charge. However, fees are assessed for entrance to various exhibits, concerts and activities.

Each of the appellees sustained an injury while visiting Penn's Landing. Appellee Mills was injured when she stepped into a hole on a grassy slope while walking towards the concert area where she was to attend a free Melba Moore concert during a July 4th festival. Appellee Halber was injured when she stepped into a drainage hole from which the grate was missing as she was approaching the ticket booth for the U.S.S. Olympia. The U.S.S. Olympia is a museum ship docked at Penn's Landing which the public may tour for a fee.

Appellee Mills filed a complaint in negligence against the Commonwealth of Pennsylvania and Penn's Landing Corporation. Appellee Halber filed a complaint in negligence against the city of Philadelphia, Philadelphia Redevelopment Authority and Penn's Landing. In both cases Penn's Landing filed motions for summary judgment claiming immunity pursuant to the RUA. The trial court involved in each case granted the motions for summary judgment. On appeal to the Commonwealth Court the judgments were reversed, as that Court

found the protection of the RUA inapplicable to Penn's Landing. Penn's Landing petitioned for allowance of appeal to this Court. The Petitions were granted and the two cases consolidated for argument and disposition.

A motion for summary judgment should be granted only in those cases where it is clear that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035; *Marks v. Tasman*, 527 Pa. 132, 589 A.2d 205 (1991). The basis upon which summary judgment was granted in both cases was the determination by the trial courts in each case that Penn's Landing was entitled to immunity under the RUA. The trial court in the Halber case gave no specific reasons beyond citing to the general provisions of the RUA. The trial court in the Mills case stated that "Penn's Landing falls within the parameters of the [RUA] since the land is made available by the owners free of charge to the public for recreational purposes." (Opinion of the trial court, at No. 6105 June term 1989, p. 3).

The Commonwealth Court reversed the trial court in the Mills case finding that the RUA "protects only owners of unimproved land." 145 Pa.Cmwlth. 558, 560–61, 604 A.2d 755 (1992). The decision of the Commonwealth Court in the Halber case, 146 Pa.Cmwlth. 713, 604 A.2d 1239 (1992), merely referenced its earlier opinion in Mills. Thus, the precise question which must be resolved by this Court is how expansive is the protection afforded by the RUA to land owners who allow public access to their property for recreational purposes without charging a fee.

The pertinent sections of the RUA provide as follows:

**§ 471–1. Purpose; liability**

The purpose of this act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

**§ 477–2. Definitions**

As used in this act:

(1) **"Land"** means land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty.

(2) **"Owner"** means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.

(3) **"Recreational purpose"** includes but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports and viewing or enjoying historical, archeological, scenic, or scientific sites.

(4) **"Charge"** means the admission price or fee asked in return for invitation or permission to enter or go upon the land.

To date this Court has had three opportunities to review the applicability of the RUA to specific claims of liability where the injured party sustained his or her injury while engaged in a recreational activity, on a site commonly used for that purpose, where the landowner charged no fee. In *Rivera v. Philadelphia Theological Seminary,* 510 Pa. 1, 507 A.2d 1 (1986), we found that the RUA was not intended to immunize the owner of an indoor swimming pool who had allowed the plaintiff's decedent to use the pool free of charge. The case of *Commonwealth of Pennsylvania Department of Environmental Resources v. Auresto,* 511 Pa. 73, 511 A.2d 815 (1986), held that the Commonwealth was an "owner" of land entitled to the protection of the RUA where the plaintiff was injured when his snowmobile struck a snow covered tree trunk in a state park. Most recently, in *Walsh v. City of Philadelphia,* 526 Pa. 227, 585 A.2d 445 (1991), this Court held that the protection of the RUA does not extend to a completely improved recreational facility.

None of our previous decisions have addressed the particular question now presented to the Court. However, *Rivera* and *Walsh* are instructive as in each of those cases this Court would not allow a landowner to thwart the basic principles of tort liability by enlarging the scope of protection the legisla-

ture intended to grant under the RUA. As this Court stated in *Rivera:*

> The intention of the Legislature to limit the applicability of the Recreation Use Act to outdoor recreation on largely unimproved land is evident not only from the Act's stated purpose but also from the nature of the activities it listed as recreational purposes within the meaning of the statute. Specifically, with the exception of "swimming," which may be either an indoor or outdoor sport, the recreational activities enumerated in the statute are all pursued outdoors.

510 Pa. at 16, 507 A.2d at 8.

In *Walsh,* this Court focused on the obligation of a landowner regarding "improvements" placed upon an outdoor recreational site.

> When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain the improvements. When such an improved facility is allowed to deteriorate and that deterioration causes a foreseeable injury to persons for whose use the facility was designed, the owner of the facility is subject to liability. We do not believe that the RUA was intended by the Legislature to circumvent this basic principle of tort law.

526 Pa. at 238, 585 A.2d at 450–51.

Penn's Landing asserts that it is entitled to the protection from liability afforded landowners under the RUA as it is a largely unimproved historic site, open to the general public for recreational purposes, free of charge. That description is not complete. Appellee Mills describes Penn's Landing as "a highly developed inner-city waterfront attraction. It contains restaurants, a museum, historic ships, a marina with slips and a stage with an amphitheater." [1] These specifically enumerated attractions all require a fee for attendance. It is also clear from the record that although Penn's Landing hosts various

---

1. This description is contained at pp. 5–6 of Appellee Mills' brief and is not contested by appellant in either its original or reply brief to this Court.

concerts and festivals free to the public, it is the site of numerous activities for which an admission fee is required.

Further clarification of the nature of Penn's Landing comes from the terms of the lease agreement between the Redevelopment Authority of the city of Philadelphia and OPDC Penn's Landing. That lease, wherein Penn's Landing is referred to as the redeveloper, provides as follows:

> WHEREAS, the Redeveloper is a non-profit corporation. organized for the purpose of assisting the City and the Commonwealth of Pennsylvania (the "Commonwealth") and their agencies in the rehabilitation and renewal of the historic site on the bank of the Delaware River at which William Penn disembarked to found the colonial Province of Pennsylvania; aiding in the elimination of blight and deterioration which now exists in this historic area; undertaking the redevelopment of the site, by creating improvements thereon, including museums, public recreation facilities, hotels, residence accommodations, office buildings and appropriate commercial structures and other structures and facilities; and arranging for the proper use of such improvements for the benefit of the City and the Commonwealth and their citizens;

Consolidate Reproduced Record at 72a. Recorded June 30, 1976 in Deed Book DCC No. 1146 at page 531, City of Philadelphia.

██ Considering the more complete picture of Penn's Landing that emerges from the briefs and record in these two cases, it becomes clear that the area in question has been vastly altered from the natural state in which William Penn discovered it several hundred years ago. In applying the RUA and the case law referred to above to the land as fully described herein, it is apparent that the RUA was not intended to provide immunity to a highly developed recreational area such as Penn's Landing.[2]

---

2. We note that while 46 jurisdictions in addition to Pennsylvania have adopted similar recreational land use statutes, very few states have addressed the issue considered herein. Of those states which have considered the scope of protection to be afforded under their acts the

We find that the factors relied upon by Penn's Landing, that the area is used for recreational purposes by the general public and that no admission fee is required to enter Penn's Landing, are not dispositive in applying the immunity protections afforded under the RUA. Rather, we believe the intended beneficiaries of the RUA, in addition to the general public, are landowners of large unimproved tracts of land which, without alteration, is amenable to the enumerated recreational purposes within the act. The purpose of the RUA was to provide immunity to landowners as an incentive to them in exchange for their tolerance of public access to their lands for recreational pursuits. The RUA was not intended to insulate owners of fully developed recreational facilities from the normal duty of maintaining their property in a manner consistent with the property's designated and intended use by the public.

As this Court stated in *Walsh*, a landowner must bear the responsibility of maintaining improvements placed upon the land to which the general public is permitted access. Ordinary users of Penn's Landing may reasonably expect the area to be maintained in a manner safe for their normal recreational pursuits. Although, it could be reasonably argued that the unimproved grassy and wooded areas within Penn's Landing do fall within the ambit of the RUA, such an overly technical application of the RUA would certainly lead to inconsistent results and thwart the intended purpose of the act.

As we conclude that Penn's Landing is not entitled to the protection of the RUA, the granting of summary judgment to Penn's Landing in each of these cases on that basis was

focus has been upon remote unimproved tracts of land in rural or semi-rural areas. *See Keelen v. State*, 463 So.2d 1287 (La.1985) (the immunity provisions should apply to owners of large remote undeveloped nonresidential rural or semi-rural lands); *Harrison v. Middlesex Water Company*, 80 N.J. 391, 403 A.2d 910 (1979) (the act should apply only to thinly populated large unimproved tracts of rural or semi-rural lands chiefly associated with hiking, fishing, camping, or hunting); *Tijerina v. Cornelius Christian Church*, 273 Or. 58, 539 P.2d 634 (1975) (application of the act should be limited to land which tended to have recreational value but was not susceptible to adequate policing or correction of dangerous conditions).

improper. Accordingly, we find that the decisions of the Commonwealth Court to reverse the awards of summary judgment in each of the two cases, which have been consolidated for the purposes of this appeal only, are affirmed. The Orders of the Commonwealth Court being affirmed, the cases are hereby remanded to the respective trial courts for further proceedings consistent with this opinion.

NIX, C.J., did not participate in the consideration or decision of this case.

LARSEN, J., did not participate in the decision of this case.