[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
In this case the plaintiff alleges that on July 15, 1993 she entered the premises of St. Mary's Immaculate Conception Church to attend a fair (¶ 3 of Revised Complaint). The fair is described as a "festival open to the public consisting of music, games, food and other activities of public amusement" ¶ 2). In Paragraph 4, the plaintiff alleges her fall on the church's premises which caused her injury was due to the negligence of the defendant church; the ground over which she had to walk was uneven, littered with rocks; there were no warning signs, etc. There are six specifications of negligence. The plaintiff alleges that she entered the premises as a business invitee and thus the church owed her a duty of care (¶ 3).
The defendant church has filed a motion for summary judgment claiming that it is immune from liability pursuant to §52-557 (g) of the General Statutes — the so-called "recreational use statute." An affidavit has been submitted by the defendant pastor in which he states in relevant part:
 5. That the property known as 212 Elizabeth Street, Derby, Connecticut, was open and available to the public between July 15 and July 17, 1993, without charge, to attend the St. Mary's Immaculate Conception Church's Summer Festival and outdoor musical concern.
 6. That between July 15 and July 17, 1993 many people would utilize the church property at 212 CT Page 584 Elizabeth Street, Derby, Connecticut, for the viewing and enjoyment of outdoor music concerts.
 7. That there was no charge for admittance or to attend the outdoor music concern and church summer festival which were held at 212 Elizabeth Street, Derby, Connecticut."
The plaintiff of course opposes the motion and has submitted her own counter affidavit which, in relevant part, refers to the festival and states:
 3. To my knowledge and belief, this festival is an annual fundraiser for the defendant and it is set up primarily in the defendant's parking lot.
 4. On the day in question there were amusement rides, games of chance, food booths and music.
 5. To my knowledge, I believe that the public was able to gain admission to the defendant's property without the payment of an admission fee, although it was necessary to purchase tickets which tickets were necessary in order to use the amusement rides, to purchase food and certain other activities. To my recollection, it was permissible to pay cash for the games of chance and one could listen to the music for free.
 6. Other than the days of this festival and occasional other church-sponsored events, the defendant's property was used solely by members of its congregation and the public was not generally invited or permitted to use the property for amusement, games or music.
 7. When I attended the festival on July 15, 1993, it was my intention to purchase tickets so that I could accompany my children to the amusement rides and otherwise entertain them. I did not intend the festival for the express CT Page 585 purpose of listening to the music which was being provided."
The standards for ruling on a motion for summary judgment are well-known. If the court determines there is a genuine issue of material fact it cannot decide it but must leave the determination of that issue to the trier of fact. However, a party filing such a motion is entitled to judgment if there is no material issue of fact precluding such judgment.
Our statute states that "where an owner of land makes it available to the public without charge, rent, fee or other commercial service for recreational purpose" the owner is in effect immunized from liability for negligence causing injury to users of the land. Sec. 52-557g(1). A "charge" is defined as "the admission price or fee asked in return for invitation or permission to enter or go upon the land." Sec. 52-557f(1). The term "recreational purpose" is defined in subsection (4) as follows:
 (4) `Recreational purpose' includes but is not limited to any of the following or any combination thereof: Hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure diving, nature study, waterskiing, snow skiing, ice skating, sledding, hang gliding, sport parachuting, hot air ballooning and viewing or enjoying historical, archeological, scenic or scientific sights."
The "recreational purpose" language is quite broad and has been given a fairly expansive reading by the court inScrapchansky v. Plainfield, 226 Conn. 446, 457 (1993), cf.Ciazza v. Shehey, 7 CSCR 1220 (1992) (fireworks display);Turcio v. Old Saybrook, 9 CONN. L. RPTR. 399 (1993) (child injured while eating ice cream at snack bar in a building owned by town and adjacent to golf course).
Just looking at the activities referred to in this suit it would be difficult to conclude that, standing alone, they did not meet the definition of a "recreational purpose." There was an outdoor music concern, games and rides. The fact that some booths sold food would not defeat this characterization. Cf., Turcio v.Old Saybrook, supra. CT Page 586
What the court at least believes should be focused on is the question of fees and charges. In other words, the act and its purposes must be read as a whole. Certainly the legislature wanted to encourage landowners to open their property to the public for recreational uses. In order to do that, the liability of owners had to be limited. On the other hand, if the owner was in fact being compensated for letting people use the land, no good reason would exist for limiting liability. The history and purposes of the act have to be more closely examined.
Our statute is similar to and uses much of the same language as the Pennsylvania statute, 68 PS § 477-1, et seq. Therefore, resort to cases from that state, though not controlling, are helpful. The genesis of both our statute and the Pennsylvania statute is a model act presented to the states by the Council of State Governments. The Pennsylvania legislature adopted the model act virtually without change. Rivera v.Philadelphia Theological Seminary, 507 A.2d 1, 7 (Pa., 1986) and as noted there is no relevant difference between the statute of that state and ours. The commentary accompanying the model act described the purpose of the act. It notes that several states have passed legislation limiting the liability of private owners who make their property open to the public for one or more recreational uses. The commentary goes on to note that "it is not reasonable to expect such owners to undergo the risks of liability for injury to persons and property attendant upon the use of their land by strangers from whom the accompanying owner receives no follows is designed to encourage availability of private lands by limiting the liability of owners to situations in which they are compensated for the use of their property and to those in which injury results from malicious or willful acts of the owner."
In keeping with this history and the purposes behind the act, courts here and in Pennsylvania have held, for example, that where land is opened for recreational use the owner would still receive immunity under the act if the owner merely charged an annual fee for upkeep and maintenance of the property. This would not be the type of "charge" which would bar application of the act under §§ 52-557f(1) and 52-557g(a), cf. 68 PS 477-2 (4) and 68 PS 477-6., Genco v. Connecticut Light Power Co.,7 Conn. App. 164, 171 (1986); also see Turcio v. Old Saybrook, supra;Livingston v. Pennsylvania Light Power Co., 609 F. Sup. 643,648 (D.C., Pa., 1985). In other words, an owner of land opening CT Page 587 it to the public for recreational use should not lose the protection afforded by the statute for charging annual fees that merely allow for upkeep of the recreational activity which is necessitated by the ordinary wear and tear visited on the property by the very act of opening it up to public use. Any other result would render the act a nullity and discourage land owners from doing that which the act sought to have them do for no fair or understandable reason.
On the other hand, even where the land is devoted to recreational use, the owner should not be protected from liability for negligence where the owner is compensated for letting people on the land. What the courts in our state and Pennsylvania say is that this means a practice, as distinguished from the annual fee cases, where the landowner lets people on the land on a quid pro quo basis — there is a charge for entering the land at the time and at each time a person enters the land. Gencov. Connecticut Light Power Co., 7 Conn. App. pp. 170-71;Livingston v. Pennsylvania Power Light Co., 609 F. Supp. at p. 648; Halpin v. Commonwealth, 18 Pa. D2 C 3d 260, 265 (1980). This makes sense since if there is a charge for entering the land which is an admission price for doing so at the time one enters the land, then it cannot be said quite so easily that the landowner is just charging a fee to cover his or her maintenance cost. The fees keep coming in whatever those costs might be and perhaps long after those costs are covered.
On the basis of this record, it does not appear that §52-557f, et seq., should be interpreted so as to give this defendant immunity from liability. What the record indicates here is that a church ran a festival for the public which consisted of several games of chance, rides and amusements and in conjunction with that or ancillary to it held music concerts. The concerts were free but people had to pay fees or charges to use the other just mentioned recreational activities of which there were several. Fees or charges for use of these activities do not appear or at least were not shown to have anything to do with or to be limit just to reimbursing the church for the clean up and set up costs of running the festival. If they were, that would present a different question. Nor is this a situation where, at least on this record, the court can say the games, rides, snack booths, cetera, were just ancillary to the use of the property for the free concerts. For all the record indicates; the concerts may have been ancillary to a purpose of having as many people as possible use and pay for the other recreational activities. That CT Page 588 is, it does not appear to be a situation like that in Turcio — there the plaintiff, who was injured at a snack bar, was barred from recovery where the main recreational activity was the golf course and the ice cream snack bar merely serviced the players and possibly observers who would use it. Cf. Kniaz v. BentonBurough, 535 A.2d 308, 309 (Pa., 1988) (woman injured attending volunteer fire department picnic, fact that a bingo game also being run at least partly to raise funds didn't defeat fact that plaintiff's purpose in going and activity in general was recreational).
Also, the fact that an admission fee was not charged to enter the festival area but a member of the public could enter that area but had to pay for each game or ride is a distinction without a difference. To say the act applies where no general admission fee is charged would mean that a completely for profit recreational or amusement park could seek the protection of the statute by charging for each recreational activity but just waiving any fee for entering the recreational amusement park area where all the games and amusements were contained. There is no justifiable reason to believe the legislature intended to protect such land owners and operators from negligence liability.
In fact this case is very much like Mills v. Commonwealth,633 A.2d 1115 (Pa., 1993) where the court held the Pennsylvania act did not afford protection to the owner of the land involved there. In that case, the court said the following about Penn's Landing — the recreational area that was the subject of the lawsuit:
 Penn's Landing asserts that it is entitled to the protection from liability afforded landowners under the RUA as it is a largely unimproved historic site, open to the general public for recreational purposes, free of charge. That description is not complete. Appellee Mills describes Penn's Landing as "a highly developed inner-city waterfront attraction. It contains restaurants, a museum, historic ships, a marina with slips and a stage with an amphitheater." These specifically enumerated attractions all require a fee for attendance. It is also clear from the record that although Penn's Landing hosts various concerts and festivals CT Page 589 free to the public, it is the site of numerous activities for which an admission fee is required.
Id. at p. 1118 "RUA" refers to Pennsylvania's Recreational Use Act, §§ 68 PS 477-1, et seq.
For the foregoing reasons, the court will not grant the motion for summary judgment.
Corradino, J.