**Roman DAVIS, Appellant**

v.

**CITY OF PHILADELPHIA
and Philadelphia Sport
and Social Club.**

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2009.
Decided Jan. 13, 2010.

Jo Ann P. Kelton, Philadelphia, for appellant.

Alan C. Ostrow, Philadelphia, for appellee, City of Philadelphia.

Michael A. Cognetti, Philadelphia, for appellee, Philadelphia Sport and Social Club.

BEFORE: COHN JUBELIRER, Judge, and FRIEDMAN, Senior Judge, and FLAHERTY, Senior Judge.

**1276**

OPINION BY Judge COHN JUBELIRER.

Roman Davis (Plaintiff) appeals from the order of the Court of Common Pleas of Philadelphia County (trial court) that granted the motions for summary judgment of the City of Philadelphia (City) and the Philadelphia Sport and Social Club (PSSC). Plaintiff fractured his tibia during a flag football game organized by PSSC on a field (the Field) in Fairmount Park (Park), which is owned by the City. Plaintiff argues that the trial court erred in holding that the City is immune from liability under the act commonly known as the Recreational Use of Land and Water Act (RULWA).[1] Plaintiff also argues that the trial court erred in granting PSSC's motion for summary judgment when questions of material fact remain unresolved.

Plaintiff engaged in a game of flag football on March 26, 2005. The game had been organized by PSSC. Plaintiff had played a previous flag football game organized by PSSC, but had not yet paid his dues to PSSC. Toward the end of the game on March 26, 2005, Plaintiff tripped in a depression in the Field. The depression was about four and a half inches deep. Plaintiff "sustained a displaced tibial fracture," which required "a subsequent open reduction and internal fixation surgical procedure." (Plaintiff's Br. at 7.) Plaintiff alleges that, as a result of his injuries, he sustained $9,058.40 in wage losses and incurred a $13,478.34 medical lien.

Plaintiff filed suit against the City and PSSC. The parties conducted discovery, which included the deposition testimony of:

(1) Plaintiff; (2) Ronald Turner, Plaintiff's teammate; (3) Timothy J. Horan, director of PSSC; and (4) Fred Hubbard, grounds maintenance supervisor for the Park Commission (a subdivision of the City). After discovery, the City and PSSC moved for summary judgment and the trial court granted both motions. In its opinion the trial court stated that, because the Field was undeveloped recreational land, the RULWA shielded the City from liability. The trial court also held that the alleged depression in the Field was such a trivial and commonplace defect that it could not constitute a dangerous condition of the land as a matter of law. Finally, the trial court concluded that Plaintiff assumed the risk of his injury by participating in the flag football game. Plaintiff now appeals to this Court.[2]

Before this Court, Plaintiff argues that: (1) the RULWA does not shield the City from liability because the RULWA only covers properties "that are largely unimproved in character and where no admission fee is charged" or which are not regularly maintained, (Plaintiff's Br. at 14); (2) if the RULWA does *not* protect the City from liability, the City is *also* liable for negligence under the real property exception of the act commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act);[3] (3) PSSC had possession of the Field such that it is liable to Plaintiff for his injuries; (4) the depression in the Field was not so trivial and common as to preclude imposition of liability on either the City or PSSC as a matter of law; and

1. Act of February 2, 1966, P.L. 1860, *as amended*, 68 P.S. §§ 477-1—477-8.

2. This Court has stated that:

 Appellate review of a trial court's grant of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion.

 Moreover, summary judgment may be granted only in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Bashioum v. County of Westmoreland*, 747 A.2d 441, 442 n.1 (Pa.Cmwlth.2000) (citations omitted).

3. 42 Pa. C.S. §§ 8541–8542.

(5) Plaintiff did not assume the risk of his injury.

We first address Plaintiff's argument that the RULWA does not shield the City. Section 3 of the RULWA states that:

> Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

68 P.S. § 477-3. Plaintiff does not dispute that he entered the Park and the Field for recreational purposes. Plaintiff does argue, however, that the RULWA does not insulate the City from liability because: the Park is a highly-developed recreational area, a fee was paid for the use of the Park, and the City breached its duty to warn Plaintiff of the depression.

■ Plaintiff argues that the RULWA does not protect the City from liability because the Park is a highly-developed and regularly maintained recreational area. Plaintiff points out that the Supreme Court has held that the protections of the RULWA are not intended to extend to "a highly developed recreational area." *Mills v. Commonwealth*, 534 Pa. 519, 525, 633 A.2d 1115, 1118 (1993). Plaintiff argues that, rather than viewing the Field by itself, this Court should view the Park as a whole in determining whether the area in which Plaintiff was injured is highly developed. Plaintiff argues that, due to the numerous improvements on the Park, such as roads, museums, and statuary, the Park is a highly-developed recreational area similar to other recreational areas that the courts have found not to be protected by the RULWA. *See, e.g., Stone v. York Haven Power Co.*, 561 Pa. 189, 196–97, 749 A.2d 452, 456–57 (2000) (dam structure); *Walsh v. City of Philadelphia*, 526 Pa. 227,

237–39, 585 A.2d 445, 450–51 (1991) (urban recreation facility); *Seiferth v. Downingtown Area School District*, 145 Pa.Cmwlth. 562, 604 A.2d 757, 759 (1992) (lacrosse field); *DiMino v. Borough of Pottstown*, 142 Pa.Cmwlth. 683, 598 A.2d 357, 361 (1991) (playground).

We disagree with Plaintiff's arguments on this point. While Plaintiff asserts that "caselaw suggests" that the overall property, rather than just the site of the injury, should be considered in determining whether the RULWA is applicable, (Plaintiff's Br. at 15), Plaintiff does not cite any particular case in support of this argument. Moreover, this Court's decision in *Bashioum v. County of Westmoreland*, 747 A.2d 441 (Pa.Cmwlth.2000), squarely supports the contrary position that this Court should look to whether the Field itself, rather than the Park, is a highly-developed recreational area.

In *Bashioum*, this Court considered whether the Giant Slide in Mammoth Park was covered by the RULWA. The trial court in that case held that, because Mammoth Park was largely unimproved, the RULWA should apply even though the injury at issue took place on the Giant Slide. *Bashioum*, 747 A.2d at 442. Specifically, the trial court in that case stated: "The dispositive fact is not whether the Giant Slide itself constitutes an 'improvement', but whether Mammoth Park itself constitutes a highly developed recreation facility." *Id.* at 445. This Court disagreed, stating that: "Generally, our courts have focused on the specific area which caused the injury to determine whether [the] RULWA is applicable or not." *Id.* at 446. Therefore, the correct focus of our inquiry in the current case is whether the Field is a highly-developed recreational area to which the RULWA would not apply.

■ The Field is not a highly-developed recreational area and, therefore, the RUL-

WA applies. Evidence in the record indicates that the Field is an open, grassy area bordered by a few trees. (Plaintiff's Response to City's Motion for Summary Judgment, Ex. A (consisting of pictures of the Field).) The only maintenance conducted on the Field is that it is mowed "[o]nce every two weeks ... between April and October." (Hubbard Dep. at 14.) The primary purpose of the Field is as "overflow parking ... for the Philadelphia Zoo," although individuals do sometimes play sports on the Field. (Hubbard Dep. at 13.) The only reasons that Plaintiff provides that the Field itself is so improved as to be removed from the purview of the RULWA is that it is regularly mowed, its trees are maintained, and it must have been cleared of trees and brush at some point; however, this is not sufficient. In *Brezinski v. County of Allegheny*, 694 A.2d 388 (Pa.Cmwlth.1997), this Court held that the "sculpting" of land to make room for a picnic pavilion would not take land out of the scope of the RULWA. *Id.* at 390. Moreover, the focus of this Court's analysis should not be on whether the land was maintained, but on whether there were *improvements* that *require* maintenance. *See, e.g., Walsh,* 526 Pa. at 238, 585 A.2d at 450 ("When a recreational facility has been designed with improvements that *require regular maintenance to be safely used and enjoyed,* the owner of the facility has a duty to maintain the improvements." (emphasis added)). Here, there is no evidence of any improvement on the Field. Therefore, it is the sort of unimproved property to which the RULWA applies.

■ Plaintiff next argues that the RULWA does not protect the City from liability because a fee was paid by Plaintiff for use of the Field. Section 6(2) of the RULWA provides that the RULWA will not limit liability "where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof." 68 P.S. § 477–6(2). Plaintiff argues that, because the PSSC paid the City for a permit for exclusive use of the Field for PSSC's games and Plaintiff was to pay dues to PSSC, he paid a charge to enter the land for recreational purposes. However, the record does not support Plaintiff's argument. Plaintiff's team never paid its registration fee to PSSC. (Horan Dep. at 16.) Plaintiff offered no testimony that he paid his dues to his team's captain. (Plaintiff Dep. at 23, 27.) Moreover, PSSC did not have a permit to use the Field on the date of Plaintiff's injury. (Horan Dep. at 40.) Therefore, since the City did not charge Plaintiff for the use of the Field, the exemption of Section 6(2) does not apply.

■ Plaintiff's last argument with regard to the RULWA is that the City is liable because it failed to warn or guard Plaintiff against the depression in the Field. Section 6(1) of the RULWA states that a landowner may be liable "[f]or wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." 68 P.S. § 477–6(1). However, even assuming that the City did willfully or maliciously fail to warn or guard Plaintiff against a dangerous condition on the Field, the City would be immune from liability for such willful or malicious conduct under the Tort Claims Act. The Supreme Court has held that the immunities provided by the RULWA and the Tort Claims Act are complementary such that any willful or malicious conduct that is exempted from the protection of the RULWA is protected by the Tort Claims Act. *Lory v. City of Philadelphia,* 544 Pa. 38, 42–43, 674 A.2d 673, 675 (1996).[4] Therefore, because the RULWA otherwise ap-

4. As Justice Cappy noted in his reluctantly concurring opinion in *Lory,* the interplay between the Tort Claims Act and the RULWA

plies to the Field, Plaintiff cannot recover from the City; liability for negligent acts would be shielded by the RULWA, while malicious or willful acts would be shielded by the Tort Claims Act.[5] Therefore, the City is immune under the RULWA and the Tort Claims Act from liability for Plaintiff's injury on the Field.

 We next address Plaintiff's argument that PSSC had possession of the Field and, as a result, could be liable to Plaintiff for his injuries. A party who possesses, but does not own, land may be liable to a plaintiff for harm caused to the plaintiff by a defect on the land. *Blackman v. Federal Realty Investment Trust,* 444 Pa.Super. 411, 664 A.2d 139, 142 (1995). Section 328E of the Restatement (Second) of Torts defines a "possessor of land" as:

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Restatement (Second) of Torts § 328E (1965). Whether a party is in possession of land is a question of fact. *Blackman,* 664 A.2d at 142. While possession of land is a question of fact, the facts adduced in the record before us are not sufficient to show possession by PSSC. PSSC occupied the Field for only brief periods, approximately once a week; PSSC did not modify the Field other than by painting lines on it; and the Field was used by other groups during the rest of the week. Moreover, even if PSSC were in possession of the Field, the Pennsylvania Supreme Court has suggested that possession sufficient to cause tortious liability to attach is possession sufficient to trigger the protection of the RULWA, stating that: "As a matter of logic, a party with sufficient control over the land as to be exposed to liability should also be deemed entitled to the protections the RULWA offers to owners who open their land for public use." *Stanton v. Lackawanna Energy Ltd.,* 584 Pa. 550, 567, 886 A.2d 667, 677 (2005).[6] Because there is no evidence that PSSC controlled or intended to exercise control over the Field, we hold that the trial court did not err in holding that PSSC did not possess the Field such that it could be liable for Plaintiff's injuries.[7]

---

results in such extensive immunity that a municipality:

> may be fully aware of, in essence, a death trap on [the municipality's] property which is subject to the [RULWA], fail or refuse to remove the deadly condition, fail or refuse to guard the deadly condition, or fail or refuse to warn of the deadly condition, and yet remain absolutely immune ·from any action filed by an innocent victim of this condition.

*Lory,* 544 Pa. at 45, 674 A.2d at 677 (Cappy, J., concurring).

5. Due to our holding that the RULWA applies to the Field, we do not reach Claimant's argument that the City would not be immune under the Tort Claims Act if the RULWA did not apply to the Field.

6. *Stanton* dealt with a defendant who had an easement on the land at issue; however, the Supreme Court based its decision partly on the definition of possession found at Section 328E, and was affirming a decision of the Superior Court that held that the protection of the RULWA should be coterminous with liability under Section 328E.

7. Due to our holdings that the City is shielded by the RULWA and that PSSC was not in possession of the Field so as to be liable for Plaintiff's injuries, we need not reach Plaintiff's arguments regarding whether the depression was a trivial defect or whether he assumed the risk of his injury. However, we note that if we were to reach the issue of whether Plaintiff assumed the risk of his injury, we would hold that he had. The question of whether a plaintiff has impliedly assumed a

For these reasons, we affirm the order of the trial court.

## ORDER

NOW, January 13, 2010, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby **AFFIRMED.**

risk is a question of law. *Zachardy v. Geneva College,* 733 A.2d 648, 650 (Pa.Super.1999). A plaintiff assumes a risk when he "deliberately and with the awareness of specific risks inherent in the activity nonetheless engaged in the activity that produced his injury." *Id.* Here, despite the assertion to the contrary in Plaintiff's brief, Plaintiff testified the game in which Plaintiff was injured was the second he had played on the Field, the first being the week before. (Plaintiff Dep. at 49.) Mr. Turner testified that the defect was evident to himself and the entire team. (Turner Dep. at 19–20.) There is no specific testimony by Plaintiff in the record on the issue of whether he observed the condition of the Field during his first game. Similarly, there is conflicting testimony in the record as to whether the City issued permits for the Field to be used as a sports field, and there is no evidence in the record indicating that Plaintiff knew the Field was not a regulation sports field. However, the combination of Mr. Turner's testimony that the entire team was aware of the defect in the Field and the fact that Plaintiff played on the Field the week before his injury indicated that Plaintiff was aware of the Field's condition when he played on it the second week and, therefore, assumed the risk of his injury.