IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen Clark and Kevin Clark,   :
as Administrators of the Estate of   :
Rebecca L. Clark,   :
          Appellants   :
   :  No.  611 C.D. 2020
         v.   :
   :  Argued:  March 10, 2022
The Schuylkill Canal Association, Inc.   :
and Montgomery County of   :
Pennsylvania   :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH               FILED: June 13, 2022


Kathleen and Kevin Clark, as Administrators of the Estate of Rebecca Clark (Appellants), appeal from the order of the Montgomery County Court of Common Pleas (trial court) entered on January 7, 2019, granting summary judgment in favor of appellee Montgomery County (County) after concluding that the County is immune from suit pursuant to the Recreational Use of Land and Water Act (RULWA).[1]  The RULWA provides immunity from negligence liability for owners of undeveloped land who open that land without charge for recreational use by members of the public.  The issue in this appeal is whether the RULWA provides the

_____

[1] Act of February 2, 1966, P.L. (1965) 1860, *as amended*, 68 P.S. §§477-1 – 477-9.

County immunity from suit for the death of 21-year-old Rebecca Clark who was struck by a falling dead tree at the Lock 60 Recreational Area in Upper Providence Township (Lock 60).

## I. Factual and Procedural History

Lock 60 is a 60-acre park owned by the County, open and accessible to the public free of charge for hiking, bonfires, picnicking, and walking along the Schuylkill River and Canal. On the late night of September 4 and early morning of September 5, 2014, Ms. Clark was with a group of friends in an area of the park near the Schuylkill River. Ms. Clark and her friends walked from the paved parking area, with their chairs, through an area of mowed grass, and down a dirt path to the riverbank. The area where Ms. Clark was at the time of accident was a flood zone and not maintained by the County. The site included a trash barrel and a formation of rocks making up a fire pit. The trash barrel, one of several within the park, was staked in place, and park rangers regularly emptied the barrel and carried plastic trash bags with them for that purpose. The parking area, about 50 yards away, included a paved driveway, a parking circle, and a kiosk displaying the park's rules and regulations. Other features at Lock 60 included the locktender's house, a walking trail, fencing, a boat ramp, and benches. The County employed park rangers, whose duties included reporting any dangerous conditions on the property, including identifying and reporting dangerous trees. The County also employed maintenance workers, whose duties included identifying and reporting dangerous conditions. The County was aware that the area was frequently used for fishing and bonfires, both day and night.

On the night in question, while her friends were lighting a bonfire, Ms. Clark walked about 15 feet away to use her cell phone. As Ms. Clark was seated on a

2

rock near the riverbank using her phone, a large dead tree fell and struck her, causing her tragic and untimely death.

Appellants' expert estimated that the tree that killed Ms. Clark was 90 feet from the paved parking area. It had been obviously dead and decaying for at least 10 to 12 years before the incident. According to Appellants' expert, the County was negligent in not recognizing the clearly dangerous condition of the tree and that it was foreseeable that the tree would fall and injure a visitor.

On October 15, 2015, Appellants filed a survival and wrongful death suit against the County, the Schuylkill Canal Association (SCA), the Commonwealth of Pennsylvania, and Upper Providence Township, claiming that these parties were negligent in failing to remove the tree, even though it had long been dead and represented a significant hazard to visitors. The claims against the Commonwealth of Pennsylvania and Upper Providence Township were voluntarily discontinued following discovery into the ownership and management of Lock 60. The claims against SCA resolved, with court approval on July 22, 2019. The claims against the County continued.

Before the close of discovery, the County moved for summary judgment, asserting immunity under the RULWA from negligent conduct, and under what is commonly known as the Political Subdivision Tort Claims Act[2] (Tort Claims Act) from intentional/malicious conduct. The trial court granted summary judgment in favor of the County. The trial court found the photographs of the site of the accident to be highly probative of the extent of development. The court found that Lock 60 (1) was large, outdoors, and rural, (2) offered recreational opportunities as listed in

---

[2] 42 Pa. C.S. §§8541-8564.

the RULWA, including boating, fishing, picnicking, and hiking, (3) was not significantly altered from its natural state, and (4) was amenable to recreational use even without alteration. Appellants now appeal.[3]

Before this Court, Appellants argue that (1) the RULWA does not shield the County from liability because substantial improvements had been made to Lock 60 from its natural state, including logs placed for seating, the formation of rock firepits, a staked-down trash can, and a well-worn pathway to get to the area where Ms. Clark was killed; and (2) even if the County is immune from liability under the RULWA, the County has a non-delegable duty to safely maintain its public property including, but not limited to, trees under section 8542(b)(4) of the Tort Claims Act. 42 Pa. C.S. §8542(b)(4). Alternatively, Appellants challenge the continuing viability of RULWA immunity for publicly owned lands. They suggest that the Supreme Court's extension of immunity to local agencies in *Department of Environmental Resources v. Auresto*, 511 A.2d 815 (Pa. 1985), was contrary to the stated purpose of the RULWA, because public lands were already open to the public and further because immunizing local agencies such as the County for tree maintenance is contrary to the non-delegable duty under the Tort Claims Act that local agencies properly maintain their trees.

---

[3] Our scope of review of a trial court's order granting summary judgment is limited to determining whether the trial court made an error of law or abused its discretion. *Brown v. Tunkhannock Township*, 665 A.2d 1318, 1320 n.2 (Pa. Cmwlth. 1995). Summary judgment shall be entered where the pleadings, depositions, answers to interrogatories, and admissions together with affidavits, if any, demonstrate that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. In deciding a motion for summary judgment, the record must be reviewed in the light most favorable to the non-moving party, and summary judgment may be entered only in cases where the right to relief is clear and free from doubt. *Id.*

4

## II. The RULWA

We first address Appellants' argument that the RULWA does not shield the County from liability. The RULWA was enacted in 1966 "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability." Section 1 of the RULWA, 68 P.S. §477-1. "Recreational purpose" is defined in Section 2(3) of the RULWA to include "but is not limited to . . . hunting, fishing, swimming, boating, recreational noncommercial aircraft operations or recreational noncommercial ultralight operations on private airstrips, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports, cave exploration and viewing or enjoying historical, archaeological, scenic, or scientific sites." 68 P.S. §477-2(3).

In furtherance of that purpose, the RULWA provides that, subject to certain exceptions, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes or give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Section 3 of the RULWA, 68 P.S. §477-3. An owner[4] who "directly or indirectly invites or permits without charge any person to use such property for recreational purposes"[5] does not incur liability for injury to such persons, except "[f]or willful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." Section 6 of the RULWA, 68 P.S. §477-6. Section 6 provides in this regard, as follows:

---

[4] Persons entitled to the protections of the RULWA include both private and public landowners. The RULWA defines an "owner" as the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises. 68 P.S. §477-2(2).

[5] Section 4 of the RULWA, 68 P.S. §477-4.

Nothing in this act limits in any way any liability which otherwise exists:

(1) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof.

68 P.S. §477-6.

Immunity under the RULWA is not absolute.  In *Rivera v. Philadelphia Theological Seminary of St. Charles Borromeo, Inc*., 507 A.2d 1 (Pa. 1986), a child drowned in an indoor pool owned by the defendant seminary.  Citing "public policy and the legislative history" of the RULWA, the Supreme Court held that the swimming pool did not fall within the scope of immunity granted by the RULWA. *Id*. at 7.  The Supreme Court explained:

> The [RULWA] is . . . designed to encourage the opening up of large, private land holdings for outdoor recreational use by the general public by limiting the liability of the landowner. Considering that purpose, we believe the Legislature intended to limit the meaning of the words "buildings, structures and machinery or equipment when attached to the realty" in Section 2 of the [RULWA], 68 P.S. § 477-2, to ancillary structures attached to open space lands made available for recreation and not to enclosed recreational facilities in urban regions.

*Rivera*, 507 A.2d at 8.

*Walsh v. City of Philadelphia*, 585 A.2d 445 (Pa. 1991), involved the Guerin Recreation Center, "a cement recreational facility" owned by the City of Philadelphia. The center was "approximately a half city block long and one block wide" and contained "two full and two half basketball courts, as well as bocce courts

6

and benches." *Id*. at 450. The plaintiff was injured when he fell in a hole in the blacktopped surface between a basketball court and a boccie court. *Id*. at 446. Applying *Rivera*, the Supreme Court concluded that the center was "a completely improved recreational facility" falling outside the protection of the RULWA. *Id*. at 450. The Pennsylvania Supreme Court explained:

> By assuming the responsibility of installing the improvements that exist at this facility, the City concomitantly assumed the responsibility for maintaining those improvements.
>
> * * *
>
> When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain the improvements. When such an improved facility is allowed to deteriorate and that deterioration causes a foreseeable injury to persons for whose use the facility was designed, the owner of the facility is subject to liability. We do not believe that the [RULWA] was intended by the legislature to circumvent this basic principle of tort law.

*Id*. at 450-51.

In *Mills v. Commonwealth of Pennsylvania*, 633 A.2d 1115, 1118-19 (Pa. 1993), two plaintiffs were injured at Penn's Landing, a "highly developed recreational area" in Philadelphia. *Id*. at 1118. One of the two plaintiffs was injured "when she stepped into a drainage hole from which the grate was missing as she was approaching the ticket booth for the U.S.S. Olympia." *Id*. at 1116. The other plaintiff was injured "when she stepped into a hole on a grassy slope while walking towards the concert area." *Id*. Noting the extensive improvements on the site, the Supreme Court stated that it "has been vastly altered from the natural state in which William Penn discovered it several hundred years ago." *Id*. at 1118. Summarizing its

7

prior decisions, the Supreme Court explained that the RULWA applies to "largely unimproved land," not "fully developed recreational facilities." *Id*. at 1117, 1119. The landowner, therefore, did not enjoy immunity from the claim of the plaintiff who stepped into the drainage hole with the missing grate. As for the other plaintiff, the Court held: "[a]lthough, it could be reasonably argued that the unimproved grassy and wooded areas within Penn's Landing do fall within the ambit of the [Act], such an overly technical application of the [RULWA] would certainly lead to inconsistent results and thwart the intended purpose of the act." *Id*. at 1119. The Supreme Court found that immunity under the RULWA did not apply in these circumstances and that:

> landowners of large unimproved tracts of land, without alteration, is amenable to the enumerated recreational purposes within [the RULWA]. . . . [It] was not intended to insulate owners of fully developed recreational facilities from the normal duty of maintaining their property in a manner consistent with the property's designated and intended use by the public.

*Mills*, 633 A.2d at 1118-19. In reaching this conclusion, the Supreme Court stated:

> it becomes clear that the area in question has been vastly altered from the natural state in which William Penn discovered it several hundred years ago . . . a landowner must bear the responsibility of maintaining **improvements** placed upon the land to which the general public is permitted access. Ordinary users . . . may reasonably expect the area to be maintained in a manner safe for their normal recreational pursuits.

*Mills*, 633 A.2d at 1118-19 (emphasis added).

Conversely, courts have held that wholly natural conditions of land fall within the ambit of the statute. In *Lory v. City of Philadelphia*, 674 A.2d 673 (Pa. 1996), a child drowned while swimming in "a natural pond located in a remote and

8

undeveloped portion of a park owned by the City of Philadelphia." *Id*. at 674. Citing the holding in *Mills* that the RULWA applies "only to lands that are largely unimproved in character," the Court found that the lake qualified for immunity. *Id*. at 674.

In *Stone v. York Haven Power Co.*, 749 A.2d 452 (Pa. 2000), two boaters drowned in Lake Frederick, a body of water formed when the Susquehanna River was dammed to service the Three Mile Island Power Plant. In a suit brought by their estates, the defendants claimed immunity under the RULWA. After a thorough review of its prior decisions, the Supreme Court explained:

> Lake Frederick is neither like the indoor swimming pool at issue in *Rivera*, nor like the natural pond in *Lory*. It is somewhere in between. The "lake" exists only because the dam was built. Before the dam was built, a navigable watercourse, the Susquehanna River, was flowing at the same location in a free and natural state. If the river still existed in its original, natural state, or if the present-day lake existed independent of the dam, there would be no question that the waterway was subject to [RULWA] immunity. Our analysis here, however, must account for the unavoidable fact of the dam.
>
> As to the dam structure itself, where the decedents' boat was found, it is self-evident that [RULWA] immunity cannot apply. Proper maintenance of the dam is essential to its intended use by appellants. In addition, proper maintenance of the dam is necessary for the continued, safe existence of the lake - it cannot exist but for the dam. Therefore, [the owners] have a duty to maintain the dam in a safe condition and are subject to suit for any harm caused by their negligent failure to do so or to warn of dangers posed by that improvement.
>
> As to the lake, however, this is "exactly the type of area that the [RULWA] is intended to cover." Lake Frederick is a large body of water used for outdoor water recreation by the public free of charge. While the body of water may be

9

> enhanced by the damming of the Susquehanna, it is not a highly developed recreational facility. But for the fact that Lake Frederick was created by the damming of the Susquehanna River, it is virtually indistinguishable from a natural lake used by the public for recreation.
>
> It is a large area left open for those who enjoy the outdoors. Its dangers are comparable to those of a natural lake. Further, users have no better reason to rely on the protection of its owners than users of a natural lake. Lake Frederick is not like a basketball court or swimming pool, where we expect meticulous maintenance. Rather, it is a place people go to experience and risk the pleasures of the outdoors.

*Id*. at 456-57 (quoting *York Haven Power Co. v. Stone*, 715 A.2d 1164, 1168 (Pa. Super. 1998) (Olszewski, J., concurring and dissenting)).

In *Davis v. City of Philadelphia*, 987 A.2d 1274, 1278 (Pa. Cmwlth. 2010), this Court held that a field cleared of trees and brush in Fairmount Park, used as overflow parking for the Philadelphia Zoo and occasionally for sports, fell within immunity of the RULWA, despite the fact that it was regularly mowed, and trees were maintained, in the absence of any "improvements" on the field.

When deciding whether an area is "improved" for purposes of the RULWA, "this Court's focus must be on the specific land where the injury occurred, rather than on the property as a whole." *Ruspi v. Glatz*, 69 A.3d 680, 688 (Pa. Super. 2013). "[O]ur courts have denied RULWA immunity . . . where injury occurred on the **developed** portion of a largely unimproved recreational area." *Murtha v. Joyce*, 875 A.2d 1154, 1159 (Pa. Super. 2005) (emphasis in original).

In *Pagnotti v. Lancaster Township*, 751 A.2d 1226 (Pa. Cmwlth. 2000), a township purchased an old mill site and converted it to seven-acre park. Some portions of the land were improved, and some were not. The township removed old structures, regraded land, converted an old pool house to community building,

10

constructed an open-air pavilion, and installed a pedestrian/bike path. A drowning occurred at the park when a child slipped over a dam on a creek. This Court created a four-point test for courts to consider in determining whether the RULWA was intended to apply to insulate a particular landowner from tort liability:

> 1) the nature of the area in question, that is, whether it is urban or rural, indoor or outdoor, large or small;
>
> 2) the type of recreation offered in the area, that is, whether persons enter to participate in one of the recreational purposes listed in section 2(3) of the RULWA;
>
> 3) the extent of the area's development, that is, whether the site is completely developed and/or significantly altered from its natural state; and
>
> 4) the character of the area's development, that is, whether the area has been adapted for a new recreational purpose or, instead, would be amenable to the enumerated recreational purposes of the RULWA even without alteration.

*Id*. at 1228.

The Court in *Pagnotti* also deemed it appropriate to consider any unique facts as additional factors when doing so would advance the purpose of the RULWA. *Id*. at 1233-34. In determining whether immunity under the RULWA applied, this Court considered not only the unimproved nature of the park as a whole, but also examined the precise location of where the injury occurred. This Court noted that the owner of the land could not have foreseen an injury resulting from the low head dam's disrepair because it did not construct it or even know of its existence until the decedent's accident. For these reasons, we determined that immunity did attach.

Thus, as the law has evolved on the issue of whether immunity attaches under the RULWA, it is clear that the analysis is a highly fact-specific determination

which must be undertaken on a case-by-case basis. *Yanno v. Consolidated Rail Corp.*, 744 A.2d 279, 283 (Pa. Super. 1999).

In the case before us, the record confirms that no genuine issue of material fact exists as to the County's entitlement to immunity under the RULWA. The site of the incident was located at a 60-acre, outdoor, rural, forested area along a riverbank. The site of the incident is not largely developed or improved in any significant way. It was not significantly altered from its natural state or adapted for a new recreational purpose. It is a large area consisting of a muddy riverbank, rocks and trees left open for those who enjoy the outdoors. Its dangers are comparable to those of a natural forest. Applying our precedent and the four-part test espoused in *Pagnotti*, the area is the type that would fall under the protection of the RULWA. It is also significant that the cause of Ms. Clark's death was a natural element of the park, an old tree, and not one of the improvements installed there. *See Walsh*, 585 A.2d at 450 ("When a recreational facility has been designed with improvements that require regular maintenance to be safely used and enjoyed, the owner of the facility has a duty to maintain **the improvements**.") (emphasis added); *Stone*, 749 A.2d at 456-57 (owners "have a duty to maintain the dam in a safe condition" but a lake caused by a dam "is virtually indistinguishable from a natural lake used by the public for recreation").

Appellants nevertheless argue the County is not entitled to immunity under the RULWA because the County regularly patrolled the park and area where Ms. Clark was killed, both with park rangers and maintenance staff, and among their duties was inspection and removal of dead and hazardous trees. According to Appellants, these inspections represented improvements/alterations to the land, which waives immunity under the RULWA. Appellants have cited no case which has held

12

that patrols and job responsibilities are "improvements" to the land from its natural state for purposes of the RULWA. In the cases construing the RULWA, courts have focused their attention on alterations and improvements to the land itself. Patrolling a park and looking for dead trees is not an improvement or alteration to the land. Accordingly, we must agree with the trial court that the owner of land otherwise subject to the RULWA does not lose its immunity by voluntarily policing the condition of the property. *See Redinger v. Clapper's Tree Service, Inc.*, 615 A.2d 743, 751 (Pa. Super. 1992) (maintenance of trees by owner of recreational land does not nullify its immunity from claim of injury from falling tree limb).

Appellants next argue that the cut logs for seating, makeshift fire pits and the trash barrel constitute "improvements" which remove the site from the protection of the RULWA. The trial court rejected this argument, finding that these slight developments do not even come close to depriving the area of its rustic, undeveloped character. We discern no error. A trash barrel where park visitors can place their trash in an area otherwise in its natural and unimproved state is not the sort of improvement which deprives a landowner of its protection under the RULWA. The same goes for the logs and rocks that were arranged (by unknown persons) into fire pit sites. According to precedent, it is not necessary that the land or water be in a **completely** natural and unimproved state for immunity under the RULWA to apply. As the trial court aptly explained, the fire pit area along the riverbank is exactly the type of rustic land that the RULWA was intended to protect. Recreational users build a bonfire in a rustic site under the stars to enjoy a vastly different experience from sitting around a fireplace in a developed, enclosed structure. "Lock 60 'is a place people go to experience and risk the pleasures of the outdoors.'" (Trial court op. at 13) (*citing Stone*, 749 A.2d at 547).

13

Finally, the fact that other parts of the park were improved with a driveway, canal, boat launch and signs, does not change the result. For purposes of determining if the RULWA applies, the focus must be on the specific land where the injury occurred, rather than on the property as a whole. *Ruspi*, 69 A.3d at 688. Here, the accident did not occur at, or because of, any of these other improvements, or at an area that was developed.

These facts make clear beyond dispute that the site of Ms. Clark's death was undeveloped and in its natural state and, therefore, falls within the immunity of the RULWA. For these reasons, the trial court did not err in granting summary judgment on the grounds that the County was entitled to immunity under the RULWA.

### III. Willful or Malicious Failure

Section 6 of the RULWA provides an exception to immunity for liability which exists for "willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." 68 P.S. § 477-6. Appellants argue that this exception applies here because County park rangers and maintenance staff regularly patrolled the park, including the area where Ms. Clark was killed, for dangerous and hazardous trees. They argue that the County knew or reasonably should have known that this long dead tree existed in an area frequented by people who used the Lock 60 recreation area, and that it created a reasonably foreseeable risk that a person would suffer injury or death if it fell. Again, we must disagree.

First, Appellants did not allege "willful or malicious" conduct in the Amended Complaint. Further, the trial court correctly found the evidence of record failed to support a finding of willful or malicious failure to guard or warn against a

14

dangerous condition, use, structure, or activity. There was absolutely no evidence that the County knew of the dead tree but "maliciously or willfully" chose to ignore it or knowingly failed to guard against any dangers associated with it. Finally, even if the record revealed willful or malicious conduct on the part of the County, the County would still be protected by the immunity provided by the Tort Claims Act.

The intersection of the Tort Claims Act and the RULWA combine to create an absolute immunity for the County. Essentially, the immunities provided by the RULWA and the Tort Claims Act are complementary such that any willful or malicious conduct that is exempted from the protection of the RULWA is protected by the Tort Claims Act.

In *Lory*, our Supreme Court explained that the exception for "willful or malicious failure" under section 6 of the RULWA must be read *in pari materia* with section 8542(a)(2) of the Tort Claims Act, 42 Pa. C.S. §8542(a)(2), which imposes liability on a local agency, such as the County, for certain specified "negligent acts," but not for "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct." Under *Lory*, if the conduct of a local agency constitutes a "willful or malicious failure" under section 6 of the RULWA, then the agency is immune from liability under the "actual malice or willful misconduct" exception of section 8542(a)(2). *Lory*, 674 A.2d at 675-76. This holding has been repeatedly reaffirmed. *See Davis*, 987 A.2d at 1278; *Wilkinson v. Conoy Township*, 677 A.2d 876 (Pa. Cmwlth. 1996).

In *Wilkinson*, the town argued that it was immune from liability under both the RULWA and the Tort Claims Act in a case where the pedestrian brought an action for injuries sustained when she fell in a hole caused by a removed tree trunk in a park. The *Wilkinson* Court held that the different standards for liability in the two

15

statutes, *i.e.*, the willful or malicious standard regarding dangerous conditions in the RULWA and the negligence requirement for removal of the bar of sovereign immunity under the Tort Claims Act create a situation where no matter what the plaintiff pleads, she is barred by the other statute. *Id*. at 878. Therefore, whether it acts maliciously or negligently, a municipality or other governmental unit is absolutely immune, without exception, under either the Tort Claims Act or the RULWA for injuries occurring on the municipally owned land. If the municipality acts willfully or maliciously, it may be held liable under the RULWA, but will be immune under the Tort Claims Act, and if the municipality acts negligently, the governmental unit may be held liable under the Tort Claims Act, but will be immune under the RULWA.

Applying *Lory* and *Wilkinson* here requires us to conclude that even if Appellants had produced evidence that the County committed a "willful or malicious failure," the County would nevertheless be immune from liability under the Tort Claims Act. As a result, summary judgment was properly entered in favor of the County and Appellants failed to satisfy their burden to show that the trial court committed an error of law or abused its discretion.[6]

This Court is very sympathetic to the tragic circumstances and loss that occurred here. However, we must be guided by the law and legal precedent. As

---

[6] Lastly, Appellants argue that the Supreme Court erroneously decided *Auresto* by extending the protections of the RULWA to public lands. Appellants ask this Court to disregard *Auresto* and hold that local agencies in general and the County in particular is not entitled to immunity under the RULWA for publicly owned lands. Counsel's argument is not well taken and we decline to address it other than to remind counsel that the Commonwealth Court is unequivocally bound by the Supreme Court's holding on this issue, and we have no authority to ignore or overturn the law as pronounced by the Supreme Court.

such, we are constrained to affirm the trial court's order entering summary judgment in favor of the County and against Appellants.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathleen Clark and Kevin Clark,    :
as Administrators of the Estate of    :
Rebecca L. Clark,    :
         Appellants    :
    :   No.  611 C.D. 2020
    v.    :
    :
The Schuylkill Canal Association, Inc.  :
and Montgomery County of    :
Pennsylvania    :

## *<u>ORDER</u>*

AND NOW, this 13th day of June, 2022, the order of the Court of Common Pleas of Montgomery County, dated January 7, 2019, is hereby AFFIRMED.

 

                             _____
                             PATRICIA A. McCULLOUGH, Judge