Jesse STANTON and Benjamin Stanton and Elaine Stanton, H/W, Appellants

v.

LACKAWANNA ENERGY, LTD. and Pennsylvania Power & Light Company, Appellees.

Superior Court of Pennsylvania.

Argued April 30, 2008.
Filed June 23, 2008.

---

Michael Gallacher, Scranton, for appellants.

John M. Mulcahey, Scranton, for appellees.

BEFORE: LALLY–GREEN, SHOGAN and COLVILLE *, JJ.

OPINION BY COLVILLE, J.

¶ 1 Jesse, Benjamin and Elaine Stanton ("the Stantons") appeal the order granting summary judgment for Pennsylvania Power & Light Company ("PP & L") based on PP & L's statutory immunity under the Recreational Use of Land and Water Act ("the RULWA" or "the Act"). The RULWA provides immunity from negligence liability for owners of undeveloped land who open that land without charge for recreational use by members of the public.[1] 68 P.S. §§ 477–1—477–8. The issue in this appeal is whether the trial court committed an abuse of discretion or error of law in determining that a gate erected by PP & L constitutes land for purposes of the RULWA, thus entitling PP & L to immunity under the Act.

### Facts and Procedural History

¶ 2 A previous panel of this Court summarized most of the relevant facts and procedural history of this case in the following manner.

> Benjamin Stanton and Elaine Stanton, his wife, . . . commenced this action individually and as parents and natural

---

* Retired Senior Judge assigned to the Superior Court.

1. Owners may still be subject to liability for willful or malicious conduct that causes injuries. *Stone v. York Haven Power Co.,* 561 Pa. 189, 749 A.2d 452, 455 (2000).

guardians of their son, Jesse Stanton, (Jesse), to recover for injuries Jesse suffered while riding a motorbike on land owned by Lackawanna Energy, Ltd. (Lackawanna). The land, consisting of 123 acres, [was, at the time relevant to this case,] substantially undeveloped, covered mostly with brush and trees, and transected by dozens of dirt trails used by area residents for recreational purposes. In 1982, ... PP & L ... purchased an easement over a section of the land for construction of electric power transmission towers and maintenance of attached lines. The easement is serviced by an access road at the entrance to which PP & L erected a steel swing-arm gate painted bright yellow. On July 30, 1994, Jesse, then ten years' [sic] old, entered the land on a motorbike for the purpose of recreational riding with a friend. Jesse encountered the swing-arm gate upon cresting a hill and, although he saw it, could not avoid hitting it. As a result of the collision, Jesse suffered a cerebral concussion and multiple fractures and dislocations that required surgical reconstruction.

In their complaint, [the Stantons] asserted claims against both PP & L and Lackawanna, contending that the defendants negligently placed or allowed the placement of the swing-arm gate, negligently closed the gate when on prior occasions it remained open, and maintained an attractive nuisance. Following a pre-trial conference, Lackawanna settled [the Stantons'] claim and [the Stantons] executed a joint tortfeasor release. PP & L, however, asserted immunity under the RULWA and sought entry of summary judgment. The trial court, the Honorable Michael Barasse, concluded that PP & L would be entitled to a defense under the RULWA based on the undeveloped character of the land but denied summary judgment. Judge Barasse reasoned that the evidence demonstrated questions of fact concerning remaining elements under [the] RULWA; i.e., whether PP & L, as the holder of an easement, is an "owner" under section 477-2, and whether PP & L had willfully failed to warn of a dangerous condition on the land under section 477-6. The court then certified its order for appeal as one involving a controlling question of law pursuant to 42 Pa.C.S.[S]ection 702(b), and PP & L filed a Petition for Permission to Appeal pursuant to Pa.R.A.P. 1311(b).

*Stanton v. Lackawanna Energy Ltd.,* 820 A.2d 1256, 1257–1258 (Pa.Super.2003). Our Court granted PP & L's petition, and PP & L filed a notice of appeal. On appeal, PP & L claimed that the trial court erred when it denied its motion for summary judgment. Specifically, it argued that [the Stantons] had failed to plead or present any evidence that PP & L acted willfully or maliciously in its failure to warn of the dangerous condition. PP & L also claimed that the trial court erred when it did not conclude, as a matter of law, that PP & L, as the holder of an easement, was an "owner" under the RULWA.

Upon our review, our Court determined that PP & L qualified as an "owner" under the RULWA. We also concluded that [the Stantons] had failed to plead or establish any evidence that PP & L acted maliciously or willfully, so as to invoke an exception to the immunity afforded owners under the RULWA. We opined that [the Stantons'] complaint did not allege anything outside the realm of ordinary negligence. Lastly, we noted that the statute of limitations had expired, thereby prohibiting [the Stantons] from amending their complaint to allege willful or malicious conduct. As such, our Court reversed the order denying

PP & L's motion for summary judgment and remanded for the entry of summary judgment in favor of PP & L. On March 3, 2003, the trial court entered an order granting PP & L's motion for summary judgment.

On March 13, 2003, [the Stantons] filed a petition for allowance of appeal, and our Supreme Court granted the petition, limiting its consideration to whether PP & L, an easement holder, constitutes an "owner" under the RULWA. *Stanton v. Lackawanna Energy, Ltd.*, 584 Pa. 550, 560, 886 A.2d 667, 673 (2005). The Court observed that the Act defined an "owner" as "the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises." *Id.* at 565, 886 A.2d at 676. Since PP & L did not have a fee interest in the land and was not a tenant or a lessee, the Court focused its examination upon whether PP & L would qualify as an "occupant" or "person in control of the premises." The Supreme Court ultimately concluded, based upon the commonly accepted meanings of these terms, that PP & L qualified as an "occupant" and a "person in control of the premises", thereby entitling it to protection as an "owner" under the RULWA. Thus, on November 23, 2005, the Supreme Court affirmed the order of the Superior Court. In its opinion, the Supreme Court made the following observation:

> We are aware that there was a third legal question essential to the grant of summary judgment in favor of PP & L, as to which no appellate review has been afforded: the question of whether the swing-arm gate qualifies as "land" for the purposes of RULWA immunity. Although the trial court addressed the issue in its opinion denying summary judgment, ruling as a matter of law in favor of PP & L, the Superior Court did not, even though

both parties addressed the question. Nor did the Superior Court explain why it did not address the question. No doubt, the Superior Court ignored the issue because it had been resolved in PP & L's favor, and the Stantons did not separately seek to appeal the interlocutory order; as a technical matter, the issue was not properly before the court. Since the Stantons were the prevailing party in the trial court, albeit on other issues, they were under no obligation to pursue an interlocutory appeal by permission to secure review of this third issue. The Superior Court's mandate in this case, which this Court affirms, directs the trial court to enter judgment in favor of PP & L. Upon entry of that order, the Stantons will be out of court, and will be free, if they so desire, to seek to appeal that final order to secure appellate review of the question concerning the swing-arm gate.

Stanton, 584 Pa. at 568 n. 10, 886 A.2d at 678 n. 10.

On December 2, 2005, the trial court entered a second order that granted summary judgment in favor of PP & L. Appellants filed a notice of appeal.

*Stanton v. Lackawanna Energy, Ltd.*, 915 A.2d 668, 669–71 (Pa.Super.2007).

¶ 3 On appeal, the Stantons raised the claim that the gate did not constitute land for RULWA purposes. PP & L, however, argued the Stantons had waived that issue by not appealing the trial court's order of March 3, 2003, which order granted summary judgment for PP & L (*see* discussion *supra*).

¶ 4 This Court determined the Stantons had no obligation to appeal the summary judgment order of March 3, 2003, because that order was a nullity. Specifically, we noted: (1) as of March 3, 2003, the record

had not yet been remanded to the trial court and (2) the Stantons had filed a petition for allowance of appeal with the Supreme Court, thereby staying any remand to the trial court until the Supreme Court decided the petition. Accordingly, the trial court lacked jurisdiction on March 3, 2003. Thus, we found the Stantons' decision not to appeal the void order did not waive the issue of whether the gate constituted land under the RULWA.

¶ 5 Additionally, we found the trial court's summary judgment order of December 2, 2005, was also a nullity. The Supreme Court had denied the Stantons' petition on November 23, 2005, and did not remand the record to the trial court until December 19, 2005. Thus, the trial court had entered its order of December 2, 2005, before it received the record. Accordingly, on December 2, 2005, the trial court did not have jurisdiction to grant summary judgment.[2] The Stantons' notice of appeal was therefore premature. For that reason, we quashed the appeal.

¶ 6 After we remanded the record to the trial court, the court again entered an order granting summary judgment for PP & L. The Stantons then filed this appeal.

### Legal Principles

¶ 7 *Summary Judgment.* Summary judgment is proper only if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *Murtha v. Joyce,* 875 A.2d 1154, 1155 (Pa.Super.2005). When reviewing a trial court's grant of summary judgment, we will not disturb the order absent an abuse of discretion or legal error. *Yanno v. Consolidated Rail Corp.,* 744 A.2d 279, 280 (Pa.Super.1999).

■ ¶ 8 *RULWA.* The purpose of the RULWA is to encourage landowners to make their property available for public recreational use. *Stone,* 749 A.2d at 455. To encourage owners in this fashion, the RULWA immunizes the owners from negligence liability toward people entering the land for recreation as long as the property is made available for use free of charge. *Id.* The need for immunity arises because of the impracticability of keeping large tracts of mostly undeveloped land safe for public use. *Id.* Owners may still be subject to liability if injuries occurring on the land result from a willful or malicious failure to guard or warn against dangerous conditions, uses or activities. *Id.*

■ ¶ 9 Land, as defined in the RULWA, means land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty. 68 P.S. § 477–2(1). As is apparent from the foregoing definition, raw land can include a structure or some type of improvement and still retain RULWA immunity. Nevertheless, an owner might work improvements to such an extent that, at some point, the property no longer qualifies as undeveloped land for RULWA purposes. *Stone,* 749 A.2d at 456.

■ ¶ 10 An example of land too developed to retain RULWA immunity arose in *Mills v. Commonwealth,* 534 Pa. 519, 633 A.2d 1115 (1993). The recreational facility in question was a historic site containing unimproved grassy and wooded areas. While the facility included those unimproved portions, other parts were highly developed with restaurants, museums and other attractions. The court observed the area had been "vastly altered from [its] natural state." *Id.* at 1118. In light of the

---

2. It is not absolutely clear whether the order was entered December 2, 2005, or December 3, 2005. In either case, the trial court lacked jurisdiction.

improvements to the land, the court found that ordinary users of the facility in question could expect it to be maintained in a manner safe for normal recreational uses. *Id.* As such, the Supreme Court determined the facility was not within the immunity of the RULWA.[3]

¶ 11 In *Stone*, a power company erected a dam that, in turn, created a lake. Apart from its creation, the lake was largely indistinguishable from a natural one. It was a large body of water used for recreation free of charge and was not a highly developed recreational facility. Persons using the lake had no reason to rely on its owners for any sort of protection, at least with respect to the lake itself. Accordingly, the Pennsylvania Supreme Court held the lake was land within the protection of the RULWA. *Stone*, 749 A.2d at 457.

¶ 12 However, the court found differently with respect to the dam. Proper maintenance of the dam was essential to its own function as well as to the continued existence and use of the lake. Had there been no dam, there would have been no lake. Based on these considerations, the court found the dam was a sufficient improvement such that the power company had a duty to maintain it in a safe condition. The company could thus be subject to liability for negligence in not doing so or in failing to warn of dangers posed by the improvement, *i.e.*, the dam. *Id.* at 456–58.

■ ¶ 13 The case law of this Court provides further instruction regarding the determination of whether land and the improvements thereon are too developed to fall within the RULWA. When making that determination, it is proper for a court to consider the use, size, location, openness and extent of improvement of the proper-

ty. *Yanno*, 744 A.2d at 282. We have discussed these broad factors more fully as follows:

First, where the owner of the property has opened the property exclusively for recreational use, the property is more likely to receive protection under the RULWA than if the owner continues to use the property for business purposes. Second, the larger the property, the less likely that it allows for reasonable maintenance by the owner and the more likely that the property receives protection under the RULWA. Third, the more remote and rural the property, the more likely that it will receive protection under the RULWA because the property is more difficult and expensive for the owner to monitor and maintain and because it is less likely for a recreational user to reasonably expect the property to be monitored and maintained. Fourth, property that is open is more likely to receive protection than property that is enclosed. Finally, the more highly-developed the property, the less likely it is to receive protection because a user may more reasonably expect that the landowner of a developed property monitors and maintains it.

*Id.* at 282–83.

### Analysis

¶ 14 Upon reviewing the record in light of the foregoing principles, we find no reason to disturb the trial court's determination that the gate qualified as land for purposes of the RULWA.

¶ 15 It is true that PP & L used its easement for business purposes, *to wit*, its towers and lines. At the same time, how-

---

**3.** It also appeared that, while entry to the overall facility and some its attractions were free to the public, other attractions required a fee. Although the fact of paid access militates against a finding of immunity and therefore played a part in the court's analysis in *Mills*, the opinion focused on the developed state of the land.

ever, the property was not opened to members of the public in order to attract those individuals for business reasons. Thus, this case is not one like *Mills* where parts of the realty were improved specifically for profit-related recreation. Rather, the access road and the area containing the towers and lines were left open without any fee and without any apparent business motive.

¶ 16 As to the size of the easement extending over Lackawanna's property, the Stantons argue that the easement was some seventy feet wide and that we should keep in mind it was not as large as Lackawanna's full 123 acres. In a related contention, the Stantons also point out the land in question was not an isolated rural area but, rather, fell within the city limits of Scranton. The thrust of these related contentions is that the PP & L property was not the type of large, hard-to-manage, remote area envisioned by the RULWA. Accordingly, the Stantons maintain PP & L should bear the responsibility of keeping its easement safe for recreational use.

¶ 17 We recognize that keeping safe a seventy-foot wide tract extending over Lackawanna's acreage might not be as difficult as maintaining the entire 123–acre area. Nevertheless, PP & L's interest lay within, and was largely indistinguishable from the bigger, unimproved acreage. Thus, the character of the land comprising PP & L's easement was essentially the same as the more sprawling area. Lackawanna's land and PP & L's easement together formed the kind of rough, undeveloped terrain whereon recreational users would not reasonably expect any particular protection or safety measures to be provided and monitored by the landowner(s). This fact is not changed just because the realty was apparently within city limits.

¶ 18 We next observe PP & L's property was open and was not an enclosed struc-

ture or facility. Also, and perhaps most telling, the land simply was not improved in any significant way. In no sense was PP & L's property a highly developed facility, vastly altered from its original state. There were towers and lines, a dirt and gravel road, and a swing-gate. Deposition testimony indicates the gate was constructed to deter trash dumping and vandalism. We understand that PP & L may have cleared the property of vegetation from time to time. At the same time, though, the overall terrain remained rough, and the Stantons have not convinced us there was ongoing maintenance or some other factor creating an expectation of safety on the part of the public. In short, there was no reason for the public to anticipate some ongoing monitoring of the gate or the rest of PP & L's easement.

¶ 19 This case thus differs from *Stone,* the matter involving the dam. Boaters on the lake in *Stone* had a reasonable expectation that the dam would be maintained and monitored in a safe fashion, particularly since it created the very lake on which they recreated. Such is not true of the simple gate that served little purpose except possibly to discourage dumpers or vandals. Thus, we are not persuaded that the gate in this case was a sufficient improvement to remove the land in question from RULWA immunity.

¶ 20 Moreover, we observe the following. The words of the RULWA specifically contemplate that owners may erect at least some type of structures on raw land without forfeiting the immunity protections the Act. If the single, skeletal gate erected under the facts this case were to remove PP & L's property from the protection of the RULWA, it would be hard to envision a reasonable structure that could be built without losing the immunity of the Act. If virtually any structure could take property outside the immunity, the Act would have

little utility or effect. Its purpose of encouraging landowners to keep property open for free public recreation would be thwarted. Owners would be less likely to let their property remain accessible if minimal structures such as the gate in this case rendered those owners liable for simple negligence.

¶ 21 Based on the foregoing analysis, we find the Stantons have not convinced us the trial court committed an abuse of discretion or committed an error of law in determining the gate was land for RUL-WA purposes. Therefore, we affirm the order of summary of judgment.

¶ 22 Order affirmed.