**Nina LINGUA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 3:10–CV–826.**

United States District Court, M.D. Pennsylvania.

July 22, 2011.

Howard A. Rothenberg, Herlands Rothenberg & Levine, Scranton, PA, for Plaintiff.

J. Justin Blewitt, Jr., Assistant U.S. Attorney, Scranton, PA, for Defendant.

## MEMORANDUM

RICHARD P. CONABOY, District Judge.

Pending before the Court is Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 25). This personal injury action arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.*, concerning an incident that took place on Sunday, July 5, 2009, at the George W. Childs Recreation Area which is part of the Delaware Water Gap National Recreation Area ("Recreation Area") (Doc. 1). Plaintiff, Nina Lingua, filed this action on April 19, 2010. (*Id.*)

On June 13, 2011, Defendant, the United States of America, filed the present motion (Doc. 25), supporting brief (Doc. 26), and statement of material facts (Doc. 27), seek-

ing dismissal of this action on the ground that it is barred by the discretionary function exception to the FTCA, and moving for summary judgment based on the applicability of the "Pennsylvania Recreation Use of Land and Water Act", 68 P.S. § 477–1, *et seq.* ("RULWA").

On June 22, 2011, Plaintiff filed her counter-statement of material facts (Doc. 29) and brief in opposition (Doc. 30). On July 12, 2011, the Government filed its reply brief (Doc. 31). Accordingly, this matter is ripe for disposition. For the reasons discussed below, we will grant Defendant's motion (Doc. 25).

## I. BACKGROUND

This personal injury action arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* (Doc. 30 at 1.) It concerns an incident which took place on Sunday, July 5, 2009, at the George W. Childs Recreation Area which is part of the Delaware Water Gap National Recreation Area ("Recreation Area"). (*Id.*) Plaintiff alleges that she sustained injuries on that date as the result of a fall which she attributes to negligence on the part of the United States. (Doc. 26 at 2.) Plaintiff acknowledges that she was a visitor at the Recreation Area and was there to picnic and take nature photographs. (*Id.* at 3.)

In her Complaint (Doc. 1), Plaintiff alleges that while an invitee on the premises, she utilized the restrooms located at one of the parking lot areas of the Recreation Area and upon exiting the restrooms she walked across the parking lot where she came upon a set of steps leading down to a "man-made path." (Doc. 30 at 1.) Plaintiff testified in her deposition that she made a right hand turn, descended the stairway which consisted of five (5) wooden man-made steps with handrail, and began to

walk down a man-made path to a picnic area where her friends were already located. (*Id.* at 1–2.) According to Plaintiff, "as she walked down this man-made path she was caused to come into contact with exposed tree roots which were exposed above the ground and as a result of same, she was caused to be violently thrown to the ground striking her left wrist on rocks which were located on the path and causing her to sustained [sic] a severely comminuted fracture of her left wrist which ultimately required surgery." (Doc. 30 at 2.)

In its brief (Doc. 26) and statement of material facts (Doc. 27), Defendant provided additional background that Plaintiff testified to at her deposition.[1] Defendant notes that on the date of her fall, Plaintiff was sixty years old, and was accompanied by a group of friends who drove to the Recreation Area and arrived in two vehicles. (Doc. 26 at 3.) Plaintiff estimates she arrived at the Recreation Area between 11:00 a.m. and 12:00 p.m. and the accident happened within an hour after they arrived. (*Id.*)

Plaintiff did not pay any fee to go to the picnic area or to enter the Recreation area. (*Id.*) The purpose of Plaintiff's visit was to picnic and do nature photography. (*Id.*) At some time after her arrival, she had gone to a restroom facility in the parking lot where their cars were parked. (*Id.*) When she left the restroom, she was walking toward the picnic table where some of her friends had gathered. (*Id.*) As she was walking toward the picnic tables she had a camera in her hand. (*Id.*)

The place where Plaintiff fell was on the path between the restroom and the picnic area where her friends were setting up for their picnic. (*Id.*)

---

**1.** The transcript of Plaintiff's deposition is found at Doc. 28.

According to Plaintiff, she saw her friends in the distance at the picnic table immediately before she started to fall. (*Id.*) As Plaintiff was returning from the restroom, there was nothing to keep her from seeing where she was walking. (*Id.*) She was able to see her friends who were gathered around the table as she was approaching them. (*Id.*) At that point, she was looking at them. As she described the accident, "I simply tripped; and when I was falling I observed my friends who were situated by the table". (*Id.*)

Plaintiff had been to the Recreation Area once a year for the prior four years and she had walked along the same path on which she fell on prior visits to the Recreation Area. (*Id.* at 3–4.) She was aware of the general condition of the trail on which she fell prior to the fall. (*Id.* at 4.) She described the area where she fell as a trail. (*Id.*)

Plaintiff fractured her arm in the fall and surgery was subsequently performed on her left wrist. (*Id.*)

The trail on which Plaintiff fell was a natural earth path which was not cemented, black-topped, bricked or made with any sort of construction material. (*Id.*) There were trees around the trail and grass on both sides of the trail. (*Id.*)

## II. DISCUSSION

Defendant moves to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction on the grounds that this action is barred by the discretionary function exception to the Federal Tort Claims Act. (Docs. 25, 26.) Defendant argues the FTCA provides a limited waiver of sovereign immunity but the waiver does not apply to any claim based on the performance of, or the failure to perform, "a discretionary function or duty on the part of a Federal agency or employee of the government." (*Id.* at 1–2 (citing 28 U.S.C. § 2680(a)).) Defendant contends the decision whether to pave or otherwise use construction material on the trails in National Parks is a decision that is placed within the discretion of the National Park Service. (Doc. 26 at 2.) Defendant argues that because the applicable statutes and policies allow the Park Service to exercise discretion in making those decisions and because the decisions can be analyzed in terms of the public policies concerning the Park Service, the alleged failure to maintain the nature trail is not actionable under the FTCA. (*Id.*) Defendant argues that it is expressly excluded from the scope of the FTCA by the discretionary function exception. (*Id.*)

In addition, Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure based on the applicability of the "Pennsylvania Recreation Use of Land and Water Act," 68 P.S. § 477–1 et seq. ("RULWA"). (*Id.*)

In opposition, Plaintiff argues the distinguishing factor in the issues raised by Defendant's motion is whether or not the area where Plaintiff's fall occurred was a "man-made path" therefore constituting an "improvement to land," or a "natural trail," therefore raising the immunity of the FTCA discretionary exception and RULWA. (Doc. 30 at 17.) Plaintiff argues because her injury occurred on a "man-made path" constituting an "improvement to land" Defendant is not immune under these statutes. (*Id.*)

Plaintiff asserts that her theories of negligence fall into five specific categories:

(1) Failure to properly design the man-made path which Plaintiff was walking on when she tripped and fell.

(2) Failing to maintain the man-made path that Plaintiff was walking on when she tripped and fell.

(3) Failure to warn Plaintiff of the dangers, i.e. the exposed tree roots, on the man-made path that she was walking on when she tripped and fell.

(4) Failure to follow appropriate safety procedures regarding the man-made path.

(5) Negligent construction of the area, more particularly the steps and man-made path.

(Doc. 30 at 5.)

Plaintiff argues that each of these theories is specifically recognized by appropriate case law as an "operational level" act as opposed to a "policy-making level" act, and therefore, do not fall within the discretionary exception to the FTCA. (*Id.*)

With regard to Defendant's argument under RULWA, Plaintiff argues that statute is not applicable in situations where the injuries are a result of improvements to land which have gone unmaintained or have not been subject to regular maintenance. (*Id.* at 15–18.) Plaintiff argues that the trail where Plaintiff's fall occurred was clearly an "improvement of land" made by Defendant, and therefore RULWA does not apply. (*Id.*)

We will address each aspect of Defendant's motion in turn (Doc. 25).

## A. FTCA

■ Under the FTCA, the United States has waived sovereign immunity in limited circumstances for claims for money damages against the United States for injury or loss of property caused by the negligent or wrongful act or omission of a federal employee. 28 U.S.C. § 2671, *et seq.* Because sovereign immunity can only be waived by the sovereignty, the circumstances of its waiver must be observed scrupulously, and not expanded by the courts. *Suarez v. United States,* 22 F.3d 1064, 1065 (11th Cir.1994).

One of the important limitations on the FTCA's waiver of sovereign immunity is the discretionary function exception, codified at 28 U.S.C. § 2680(a). There Congress provided that the provisions of the FTCA shall not apply to:

[a]ny claim ... based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Congress imposed this limitation "to protect certain important governmental functions and prerogatives from disruption," *Molzof v. United States,* 502 U.S. 301, 311, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992), and "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1994); *accord United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

■ It was the considered judgment of Congress that preserving immunity for claims challenging policy-based discretionary conduct was necessary "to protect the Government from liability that would seriously handicap efficient government operations." *United States v. Muniz,* 374 U.S. 150, 163, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The discretionary function exception to the FTCA "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig Airlines,* 467 U.S. at 808, 104 S.Ct. 2755; *accord Berkovitz by Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531

(1988). Because of this and other limits, the FTCA provides no assurance that persons injured by federal employees will be compensated. *Dalehite v. United States,* 346 U.S. 15, 17, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

■ From the four leading Supreme Court cases construing the discretionary function exception—*Gaubert,* 499 U.S. at 323, 111 S.Ct. 1267, *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954, *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. 2755, and *Dalehite,* 346 U.S. at 17, 73 S.Ct. 956—courts have gleaned "a two part test for determining whether the discretion function exception bars suit against the United States in a given case." *Cohen v. United States,* 151 F.3d 1338, 1341 (11th Cir.1998). The Third Circuit articulated this two part test in *Merando v. United States,* 517 F.3d 160, 164–65 (3d Cir.2008):

> Courts make two-part inquiries to determine whether the discretionary function applies in any particular case. *United States v. Gaubert,* 499 U.S. 315, 322–23, 111 S.Ct. 1267, 1273–74, 113 L.Ed.2d 335 (1991). First, a court must determine whether the act giving rise to the alleged injury and thus the suit involves an "element of judgment or choice." *Id.* at 322, 111 S.Ct. at 1273 (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically proscribes a course of action for an employee to follow', because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958–59); *see also Mitchell v. United States,* 225 F.3d at 363; *Cestonaro,* 211 F.3d at 753.

. . . .

> Second, even if the challenged conduct involves an element of judgment, the court must determine "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23, 111 S.Ct. at 1273.

Because the purpose of the exception is to prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy. *Id.* (internal quotation marks and citations omitted). The "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325, 111 S.Ct. at 1275; *see also Mitchell,* 225 F.3d at 363–64; *Cestonaro,* 211 F.3d at 753; *Sea-Land Serv., Inc. v. United States,* 919 F.2d 888, 892 (3d Cir.1990).

(*Id.*)

■ If the challenged acts and omissions conceivably involve policy considerations and are discretionary in nature, they are immune from suit under the FTCA. *See id.; Gaubert,* 499 U.S. at 322–25, 111 S.Ct. 1267.

■ In this case, Plaintiff asserts that Defendant acted negligently in failing to maintain the trail on which she fell. (Doc. 1.) In bringing the present motion, Defendant argues it is immune from suit under the discretionary exception to the FTCA asserting the National Park Service has the discretion under pertinent statutes and policies to determine what safety measures to employ at a particular location. (Doc. 26 at 2.) According to Defendant, this re-

quires the National Park Service to make policy judgments and balance competing considerations. (*Id.*)

In support of its argument, Defendant argues in 1916 Congress enacted Section 1 of the Park Service Organic Act which created the Park Service within the Department of Interior. (Doc. 26 at 10 (citing 16 U.S.C. § 1).) In Section 1, Congress provided that the Park Service is to administer the nation's parks and conserve:

> the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

(*Id.*)

Defendant contends the Recreation Area, as a unit of the National Park System, is managed in accordance with that mandate. (*Id.* at 11.) According to Defendant, the National Park Service has adopted policy that guides it in implementing this mandate, and there is policy with respect to visitor safety in recreation areas. (*Id.*)

Defendant contends the relevant guidelines make it clear that National Park Service policy permits park managers to exercise discretion when determining what, if any, safety measures are needed in a particular location. (*Id.*) In support, Defendant points to the Management Policies 2006 manual ("Management Policies"), the version in effect at the time of this incident, which sets out the Park Services's visitor safety policies, but sets no standard for the installation of safety devices:

> The saving of human life will take precedence over all other management actions as the Park Service strives to protect human life and provide injury-free visits. The Service will do this within the con-

straints of the 1916 Organic Act. The primary—and very substantial—constraint imposed by the Organic Act is that discretionary management activities may be undertaken only to the extent they will not impair park resources and values.

> These management policies do not impose park specific visitor safety prescriptions. The means by which public safety concerns are to be addressed is left to the decision of the superintendents and other decision-makers at the park level, who must work within the limits of funding and staffing. Examples include decisions about whether to install warning signs or artificial lighting ... close roads and trails or install guardrails and fences.... Some forms of visitor safeguards—such as fences, railings and paved walking surfaces—typically found in other public venues may not be appropriate in a national park setting.

(Doc. 26 at 11 (citing Management Policies § 8.2.5.1).)

Defendant argues there is simply no law, regulation, or policy directing the National Park Service to employ any particular form of safety protection, but rather, the Management Policies 2006 provides only broad statements about safety that do not remove the Park Service's discretion in determining what safety measures to employ. (Doc. 26 at 11.)

Finally, Defendant argues that Courts have considered the very policy relied upon here, or policies similar thereto, and have found they did not remove discretion from the park managers. (Doc. 26 at 12 (citing *Merando v. United States,* 517 F.3d 160, 169, 172 (3d Cir.2008)(finding that Park Service's Management Policies 2001 did not mandate any particular methods of hazardous tree management); *Tippett v.*

*United States,* 108 F.3d 1194, 1197 (10th Cir.1997)(finding that "the general goal of protecting human life in the nation's national parks is not the kind of specific mandatory directive that operated to divest [a park ranger] of discretion"); *Autery v. United States,* 992 F.2d 1523, 1528–29 (11th Cir.1993)(the "general guideline" that "the saving and safeguarding of human life takes precedence over all other park management activities ... is insufficient to deprive the federal government of the protection of the discretionary function exception"); *Gabriel v. United States,* 2009 WL 22289 *4 (M.D.Fla.2009) ("The plain language of these guidelines indicates that the Park Service has discretion in how to address safety concerns at [the Park], while determining some measures 'may not be appropriate' in a specific location."); *Brotman v. United States,* 111 F.Supp.2d 418, 424 (S.D.N.Y.2000)(finding that the "Management Policies do not specifically prescribe that any particular safety measure be employed at any particular place")).)

We agree with Defendant that because there is no specifically prescribed course of action regarding the employment of certain safety measures that these are the types of decisions protected by the discretionary exception. Based on this reasoning and in accordance with the extensive case law outlined above, we find the first-prong of the two-part test for determining whether the discriminatory function exception bars suit is satisfied.

As noted above, the second-prong of the test is whether the discretion at issue is the type the discretionary function exception is intended to protect. The "focus of the inquiry is not on the agent's subjective intention in exercising the discretion conferred by the statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy

analysis." (Doc. 26 at 13 (citing *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267).)

Here, Defendant argues under the relevant National Park Service policies park managers must consider a variety of competing interests when making decisions on what, if any, safety measures should be installed in a particular location. (Doc. 26 at 13.) The National Park Service must balance visitor safety, aesthetics, resource protection, and funding. (*Id.*) Defendant points to the Eleventh Circuit's decision in *Autery,* 992 F.2d at 1530, where that court explained that these are precisely the types of decisions grounded in policy:

> Generally, courts have held that decisions about what safety measure to employ in national parks and how to execute them involve balancing the same considerations that inform all policy decisions regarding the management of national parks: safety, aesthetics, environmental impact, and available financial resources.... [W]hen the Park Service balances safety considerations against the interest in preserving the natural environment, that decision is grounded in policy.

*Autery,* 992 F.2d at 1530. Other courts, including the Third Circuit Court of Appeals, have taken a similar approach. *See Mitchell v. United States,* 225 F.3d 361, 366 (3d Cir.2000) (Park Service's decision about how and when to reconstruct a road in the Delaware Water Gap National Recreation Area was a discretionary decision that required the Park Service to "balance its mission of preserving the parklands against the severity of design flaws and the different levels of deterioration of the road"); *Reetz v. United States,* 224 F.3d 794, 797 (6th Cir.2000) ("Decisions protected from tort liability by the discretionary function exception to the FTCA include: 1) the proper response to hazards; 2) how to

make federal lands safe for visitors; and 3) whether to warn of potential dangers.")

Considering the abundant case precedent, we find the decision as to what safety measures were employed on the trail at issue in this case, is a decision grounded in policy and the type the discretionary function exception is intended to protect. Therefore find the second prong of the discretionary exception test is satisfied. The National Park Service engages in balancing the need to maintain the natural integrity of the grounds, minimize the number of non-authentic features, manage limited financial resources, and provide for visitor safety. We find that these decisions constitute policy choices, which the Third Circuit has cautioned that federal courts "should not second guess." *Mitchell v. United States*, 225 F.3d 361, 364 (3d Cir.2000). Therefore, we find the discretionary exception applicable in the present case.

We are not persuaded by Plaintiff's argument that each of her five theories of negligence against Defendant is specifically recognized by appropriate case law as an "operational level" act as opposed to a "policy-making level" act thereby making the discretionary exception inapplicable. (Doc. 30 at 5.) Plaintiff's arguments ignore the relevant Third Circuit precedent, and many of the cases cited by Plaintiff predate relevant case precedent or are inapposite to this matter.

First, Plaintiff argues the discretionary function exception of the FTCA does not bar claims against the United States arising when the act complained of is based on the government's negligent design, construction and maintenance of the area where the incident occurred. (Doc. 30 at 6) (citing *Sexton v. U.S.*, 797 F.Supp. 1292 (E.D.N.C.1991)). Plaintiff asserts that she was injured while traversing this "man-made path" due to the negligent construction and design of same, the lack of warnings of a dangerous conditions, and the lack of regular maintenance by Defendant. (*Id.* at 6–7.)

Plaintiff argues the "man-made" path was not the result of "natural growth" or "natural vegetation" but instead, was designed and constructed by the Defendant to allow visitors of the park access to the picnic area from the parking lot area. (*Id.* at 7.) Plaintiff argues that one of her claims is that in designing and constructing this path the government had an obligation to do so in such a way that tree roots would not be exposed creating a tripping hazard. (*Id.*) Plaintiff argues there are many ways which this could have been accomplished while still maintaining the natural look and habitat of the area. (*Id.* at 7–8.)

Plaintiff further argues that while the decision to build steps to and cut a path through the natural vegetation and wooded area may have been discretionary and therefore made on a "planning level," once the construction was implemented the government had the duty to construct the area with due care. In support, Plaintiff offers, *Greene v. U.S.*, 745 F.Supp. 1486 (E.D.Mo.1990), where the plaintiff was injured in a fall on stairs which lacked a handrail. In denying the government immunity under the discretionary function exception, the court in that case pointed out that while the decision as to whether or not to install handrails to outside stairs may have been a discretionary decision on a "planning level" the court indicated that once construction of the stairs was approved the construction had to be implemented with due care. *Id.*

We find Plaintiff's arguments at odds with the extensive case law discussed above finding that the National Parks Service's decisions on trail safety are within the discretionary function exception. We

find that to the extent Plaintiff attempts to argue that the Park Service was negligent in its decision, or that the Park Service should have decided differently, such an argument is without merit. The issue here is whether the Government's discretionary decision was susceptible to policy analysis—not whether it was negligent in the decision it ultimately made or in the quality of its assessment as to what was needed to preserve the Recreation Area's natural character. *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267; *Varig Airlines,* 467 U.S. at 820, 104 S.Ct. 2755. We find that the discretionary decision relevant to this case was susceptible to policy analysis as decisions regarding the appropriate safety measures to employ are exactly the type of decisions that the discretionary function exception was intended to protect. Such decisions go "straight to the Services' core mission of managing national monuments." *Gabriel,* 2009 WL 22289 at *6.

This court was recently faced with a similar argument in *Miller v. United States,* 642 F.Supp.2d 437, 443 (M.D.Pa. 2009). In *Miller,* this Court recognized in the context of a slip and fall in a culvert within the Gettysburg National Military Park that "the policies and guidelines put forth by [the National Park Service] demonstrate that the decisions where and if to put signs and safety features along the historic routes and amid battlefields grounds is precisely the type of discretionary decision that requires the Park Service to balance conflicting policy concerns." *Id.*

Plaintiff further argues that Defendant chose not to place any warnings or to not warn Plaintiff of the dangerous condition which existed on the "man-made path" at the time of this accident, and therefore the government's failure to warn of this condition, that they themselves created, is not protected under the discretionary function exception to the FTCA. (Doc. 30 at 10–12)

(citing *Caplan v. U.S.,* 877 F.2d 1314 (6th Cir.1989) (where the government's actions create the danger, the government cannot then hide behind the FTCA discretionary function to immunize it from liability for an accident that occurs as a result of those previous actions).) Plaintiff argues that Defendant chose the design of the path and chose to simply leave the path in a "natural—earthian look" as opposed to supply it with a covering which would have prohibited the exposure of tree roots which clearly caused the dangerous condition to exist in the first place. (Doc. 30 at 11–14.)

■ Again, we find this argument unavailing as it is in direct contrast to numerous cases holding that decisions as to the need for signs or safety barriers fall within the discretionary function exception. *See Elder v. United States,* 312 F.3d 1172 (10th Cir.2002) (decisions on signs and safety barriers fall within the discretionary function exception); *Shansky v. United States,* 164 F.3d 688 (1st Cir.2000)(decision on installing handrails and/or signs in national historic site falls within discretionary function exception); *Zumwalt v. United States,* 928 F.2d 951, 955 (10th Cir.1991) (decision not to install warning signs in Pinnacles National Monument was within exercise of discretion); *Bowman v. United States,* 820 F.2d 1393 (4th Cir.1987) (holding that decisions to install guardrails warning sings along the Blue Ridge Parkway falls within discretionary function exception); *Gabriel v. United States,* 2009 WL 22289 at *6 (M.D.Fla.2009)("the challenged decision of the Park Service [not to enact specific safety measures] goes straight to the Services' core mission of managing national monuments"); *Whalen v. United States,* 29 F.Supp.2d 1093 (D.S.D.1998)(decision not to implement safety precautions is susceptible to policy considerations); *Alderman by Alderman v. United States,* 825 F.Supp. 742 (W.D.Va.1992)(alleged failure by Park

Service to install a warning found within discretionary function exception).

With respect to Plaintiff's reliance on *Smith v. U.S.*, 546 F.2d 872 (10th Cir. 1976), as Defendant noted, this decision has frequently been criticized by other Courts. In fact, the Tenth Circuit itself has rejected the *Smith* case's rationale in subsequent cases. *See Miller v. United States*, 710 F.2d 656 (10th Cir.1983).

Ultimately, we find Plaintiff has failed to identify a mandatory policy requiring maintenance of the trail where this accident occurred, and failed to distinguish this matter from controlling Supreme Court and Third Circuit decisions which bear on the discretionary function exception. We agree with Defendant that the National Park Services' decisions regarding trail safety measures, particularly its decision to allow the trail to exist in a "rough hewn" condition in keeping with its location in a wooded area rather than to meticulously maintain it or to create a highly developed concrete or asphalt walkway, are well within the scope of the discretion accorded to National Park Service managers under the National Park Management Policies 2006 manual. As Defendant argues, those decisions, which are part of the overarching decisions to maintain the rustic natural environment of the Park, fall within the scope of the discretionary function exception to the FTCA.

Accordingly, we find the discretionary function exception precludes Plaintiff's claims and therefore her claims should be dismissed.

**B. RULWA**

██ We further find that Pennsylvania's Recreational Use of Land and Water Act ("RULWA"), 68 P.S. § 477–1–477–9, precludes Plaintiff's claim under the FTCA.

The purpose of RULWA is to encourage land owners to make their property available for public recreation. 68 P.S. § 477–1. To encourage owners in this manner, RULWA immunizes such owners from negligence liability toward people entering the land for recreational use free of charge. 68 P.S. §§ 477–4, 477–6. The need for such immunity arises because of the impracticability of keeping large tracks of mostly undeveloped land safe for public use. *Stone v. York Haven Power Co.*, 561 Pa. 189, 749 A.2d 452, 455 (2000). Pursuant to Sections 477–1 to 477–8 of RULWA, an owner who allows use for recreational purposes of property by the public without charge is liable for only willful or malicious failure to guard or warn against a dangerous condition.

██ The Third Circuit has made clear that RULWA applies to the United States in cases in which tort claims are brought against the United States. *Hahn v. United States*, 493 F.Supp. 57, 59 (M.D.Pa.), *aff'd* 639 F.2d 773 (3d Cir.1980); *see also DePatch v. United States*, 1996 WL 355355 (E.D.Pa.1996). Since the liability of the United States under the FTCA is determined by applying the law of the State where the claim arose, this very statute has been repeatedly found to be applicable to the United States in FTCA cases. *Hahn v. United States*, 493 F.Supp. 57 (M.D.Pa. 1980), *aff'd* 639 F.2d 773 (3d Cir.1980); *Blake v. United States*, 1998 WL 111802 (E.D.Pa.1998); *De Patch v. United States*, 1996 WL 355355 (E.D.Pa.1996), *aff'd without opinion*, 111 F.3d 126 (3d Cir.1997); *Anderson v. United States*, 1988 WL 17018 (E.D.Pa.1988).

The Pennsylvania Supreme Court in *Stone v. York Haven Power Co.*, 561 Pa. 189, 749 A.2d 452, 455 (2000), reaffirmed its holding in *Commonwealth of Pennsylvania Department of Environmental Resources v. Auresto*, 511 Pa. 73, 511 A.2d

815 (1986), wherein the Supreme Court held that RULWA bars a negligence claim arising from a snowmobile accident caused by a snow covered tree stump in a state forest. In the *Stone* case, the Pennsylvania Supreme Court held that a lake on recreational land was protected under RULWA. Similarly, the Commonwealth Court in *Pagnotti v. Lancaster Township,* 751 A.2d 1226 (Pa.Cmmwlth.2000), *appeal dismissed as improvidently granted,* 565 Pa. 467, 776 A.2d 266 (Pa.2001), held that RULWA applied to bar a claim by a minor drowned when he slipped from or swam over a low head dam situated on a creek located in a community park. Likewise, in *Yanno v. Consolidated Rail Corporation,* 744 A.2d 279 (Pa.Super.1999), the Court held that RULWA immunized the defendant railroad from suit for injuries suffered by a pedestrian when he fell from a railroad trestle on railroad property that was no longer used for business purposes.

Defendant argues that under no reasonable analysis, consistent with the purpose of RULWA, can the site of this accident at this Recreation Area be viewed as having occurred on improved land or be otherwise outside the protection afforded by RULWA. We agree. RULWA explicitly defines "land" to include "roads" 68 P.S. § 477–2(1); *see also Gallo v. Yamaha Motor Corp., U.S.A.,* 363 Pa.Super. 308, 526 A.2d 359 (1987) (holding that RULWA applied to a paved road in a residential development).

In the present matter, Plaintiff was on a natural trail when the accident occurred. In her deposition, Plaintiff herself noted the path was natural earth, which was not cemented, black-topped, bricked or made with any sort of construction material. (Doc. 26 at 4.) Plaintiff also acknowledged she was at the Recreation Area for a recreational purpose—to picnic and do nature photography. Finally, there is no charge or admission fee for entrance to the Recreation Area. (Doc. 26 at 20) (citing Lisnik Declaration, para. 2). We find, under these facts, there is no question that RULWA applies to the present case.

In opposition, Plaintiff acknowledges that it is true that the Third Circuit has made clear that the RULWA applies to the United States in cases in which tort claims are brought against the United States, *see Hahn v. U.S.,* 493 F.Supp. 57, 59 (M.D.Pa.) affirmed, 639 F.2d 773 (3d Cir.1980), however, Plaintiff argues that it is equally true that the RULWA is not applicable to situations where the injuries are a result of improvements to land which have gone unmaintained or have not been subject of regular maintenance. (Doc. 30 at 15.)

Plaintiff argues that courts have held that where the land devoted to recreational purposes has been improved in such a manner as to require regular maintenance in order for it to be used and enjoyed safely, the owner has a duty to maintain the improvements. Failure to do so constitutes negligence which is not protected under the RULWA. (Doc. 30 at 15)(citing *Stone v. York Haven Power Company,* 749 A.2d 452, 561 Pa. 189 (Pa.2000)). Plaintiff asserts that courts have held that the RULWA was "never intended to bar claims arising out of the effective improvements to the land." (Doc. 30 at 15–16 (citing *Brown v. Tunkhannock Township,* 665 A.2d 1318 (Pa.Comwlth.1995), *reargument denied, appeal denied,* 675 A.2d 1252, 544 Pa. 636))(a baseball field at which bleachers had been provided was held to be "improved land" outside the purview of the RULWA and therefore a property owner could be potentially liable for injuries suffered by a spectator who fell from the bleachers).

Here, Plaintiff contends the area where her fall occurred was clearly and undeni-

ably an "improvement to land" made by Defendant. (Doc. 30 at 16.) Plaintiff argues that the incident took place on a man-made, constructed path through a wooded and heavily vegetated area. Plaintiff notes that a constructed parking lot area with a constructed set of wooden steps leading from the parking lot area leads to the man-made path at issue. (*Id.*) Plaintiff asserts that clearly the "man-made path" on which Plaintiff was traversing when she came in contact with exposed tree roots which caused her fall is not a natural condition of the land but instead was designed, constructed and cut through the vegetated area by the Defendant in order to provide users of the park with a means of ingress and egress to a picnic area several feet away. (*Id.*) According to Plaintiff, since the area where she fell is undeniably an "improved piece of land," which clearly and undeniably required regular maintenance in order for it to be used and enjoyed safely by park users, it does not fall within the purview of RULWA. (*Id.* at 16–17.)

We are not persuaded by Plaintiff's "improved land" argument. "Land," is defined in RULWA as "land, roads, water, watercourses, private ways and buildings, structures and machinery or equipment when attached to the realty." 68 P.S. § 477–2(1). From this definition, it is apparent that raw land can include a structure or some type of improvement and still retain RULWA immunity. *Stanton v. Lackawanna Energy, Ltd.*, 2008 Pa. Super 132, 951 A.2d 1181 (Pa.Super.2008). While the Pennsylvania Supreme Court has held that too much development can remove property from the protection afforded by the RULWA, we find those cases inapposite from the present matter as they involved highly developed locations, such as Penn's Landing in Philadelphia in *Mills v. Commonwealth of Penn-*

*sylvania*, 534 Pa. 519, 633 A.2d 1115 (1993), or an indoor swimming pool in *Rivera v. Philadelphia Theological Seminary*, 510 Pa. 1, 507 A.2d 1 (1986). Tellingly, even in the case relied on by Plaintiff, *Stone v. York Haven Power Company*, 561 Pa. 189, 749 A.2d 452 (2000), although the Supreme Court held that the hydropower dam where the plaintiff's decedent died was not covered by the RULWA, the Court recognized that the lake created by the dam would be covered. 561 Pa. at 199, 749 A.2d 452.

We agree with the Defendants that the instant case involves precisely the type of location RULWA was designed to encourage landowners to keep open for public recreation. The George W. Childs Recreation Site is part of the Delaware Water Gap National Recreation Area which contains 67,210 acres of minimally developed natural land along the Delaware River which is open to the public free of charge for recreational activities. (Doc. 26 at 5.) We find the fact that 68 P.S. § 477–2(1) specially includes "roads" and "private ways" in its definition of "land" removes any question that the simple foot trail at issue in this case would be covered by the RULWA.

Further, pursuant to sections 477–1 to 477–8 of RULWA, an owner who allows use for recreational purposes of property by the public without charge is liable for only willful or malicious failure to guard or warn against dangerous conditions. Importantly, Plaintiff's complaint fails to allege willful or malicious conduct by the Defendant and we find that, under the facts of this case, the conduct of Defendant could not conceivably rise to the level of willful or wanton misconduct.

Accordingly, we find that Pennsylvania's Recreational Use of Land and Water Act, 68 P.S. § 477–1–477–9, precludes Plaintiff's claim under the FTCA.

## III. CONCLUSION

For the reasons discussed above we find this action is barred by the discretionary function exception to the FTCA, and that based on the applicability of RULWA summary judgment is appropriate. Accordingly, we will grant Defendant's motion (Doc. 25) and dismiss Plaintiff's claims. An appropriate Order follows.

### ORDER

AND NOW THIS 22nd DAY OF JULY 2011, for the reasons addressed in the accompanying Memorandum, it is hereby Ordered that:

1. "Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment" (Doc. 25) is GRANTED;

2. Plaintiff's claims are dismissed;

3. The Clerk of Court is directed to close this case.